# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE FORD SUPER DUTY ROOF-CRUSH LITIGATION | Case No. 4:22-cv-12079-FKB-DRG |
| | Honorable F. Kay Behm |
| | Magistrate Judge David R. Grand |

# FORD MOTOR COMPANY'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' SECOND CONSOLIDATED CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................2

I.    Plaintiffs received the benefit of their bargain and cannot recover damages simply because they believe their trucks could be made safer........2

II.   Plaintiffs lack standing to pursue claims on behalf of a putative class that none of them could pursue as individuals. ...............................4

III.  Plaintiffs fail to state a warranty claim.........................................6

    A.    Statutes of limitations bar most Plaintiffs' claims. ..............................6

    B.    Many implied-warranty claims also fail under Ford's limited warranty. ..............................................................10

    C.    The implied warranty claims lack other required elements. ..............12

    D.    Plaintiffs fail the MMWA numerosity requirement...........................16

IV.  The fraud-based claims are deficient............................................17

    A.    The fraud-based claims cannot survive Rule 9(b). ............................17

    B.    Plaintiffs do not plead facts gving rise to a duty to disclose..............19

    C.    The Economic Loss Rule bars certain Plaintiffs' claims. ..................22

V.   The Arkansas, Iowa, and South Carolina consumer protection statutes bar those putative class claims. ......................................24

CONCLUSION .........................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Alvarez v. Am. Honda Motor Co.*,
  2023 WL 4681557 (C.D. Cal. Mar. 14, 2023)....................................................23

*Aro Corp. v. Allied Witan Co.*,
  531 F.2d 1368 (6th Cir. 1976) .............................................................................7

*Beck v. FCA US LLC*,
  273 F. Supp. 3d 735 (E.D. Mich. 2017) ......................................................12, 13

*Burnette v. Nicolet, Inc.*,
  818 F.2d 1098 (4th Cir. 1968) (N.C.) .................................................................22

*Bussian v. DaimlerChrysler Corp.*,
  411 F. Supp. 2d 614 (M.D.N.C. 2006) ...............................................................24

*Cadena v. Am. Honda Motor Co., Inc.*,
  2021 WL 9839349 (C.D. Cal. Mar. 10, 2021)....................................................16

*Counts v. Gen. Motors, LLC*,
  237 F. Supp. 3d 572 (E.D. Mich. 2017) ...............................................................4

*Counts v. Gen. Motors, LLC*,
  606 F. Supp. 3d 678 (E.D. Mich. 2022) .............................................................20

*Cox House Moving, Inc. v. Ford Motor Co.*,
  2006 WL 2303182 (D.S.C. 2006)........................................................................14

*Crawford v. FCA US LLC*,
  2021 WL 3603342 (E.D. Mich. Aug. 13, 2021)....................................................4

*D Stadtler 2015 Trust v. Gorrie*,
  2023 WL 2503642 (D. Ariz. Mar. 14, 2023)......................................................23

*Droesser v. Ford Motor Co.*
  2023 WL 2746792 (E.D. Mich. Mar. 31, 2023).........................................14, 16

*In re Duramax Diesel Litig.*,
  298 F. Supp. 3d 1037 (E.D. Mich. 2018) .............................................................4

*Fallick v. Nationwide Mut. Ins. Co.*,
   162 F.3d 410 (6th Cir. 1998) ............................................................5, 6

*In re FCA US LLC Monostable Elec. Gearshift Litig.*,
   334 F.R.D. 96 (E.D. Mich. 2019), *clarified on denial of
   reconsideration*, 340 F.R.D. 251 (E.D. Mich. 2022)............................4

*Fisher v. Pelstring*,
   817 F. Supp. 2d 791 (D.S.C. 2011) .................................................21

*Flores v. FCA US LLC*,
   2021 WL 1122216 (E.D. Mich. Mar. 24, 2021)................................14

*Floyd v. Am. Honda Motor Co.*,
   966 F.3d 1027 (9th Cir. 2020) ........................................................17

*Foodbuy, LLC v. Gregory Packaging, Inc.*,
   987 F.3d 102 (4th Cir. 2021) ..........................................................24

*Fox v. Saginaw Cnty.*,
   67 F.4th 284 (6th Cir. 2023) ..............................................................5

*Francis v. Gen. Motors, LLC*,
   504 F. Supp. 3d 659 (E.D. Mich. 2020) .......................................4, 12

*Franklin v. Fisher*,
   2017 WL 4404624 (6th Cir. May 15, 2017)......................................8

*Garrett v. Ohio State Univ.*,
   60 F.4th 359 (6th Cir. 2023) ...........................................................10

*Goldstein v. Gen. Motors LLC*,
   517 F. Supp. 3d 1076 (S.D. Cal. 2021)..............................................6

*Gregorio v. Ford Motor Co.*,
   522 F. Supp. 3d 264 (E.D. Mich. 2021) .............................................4

*Harnden v. Ford Motor Co.*,
   408 F. Supp. 2d 315 (E.D. Mich. 2005) ...........................................11

*Harrison v. GM, LLC*,
   2023 WL 348962 (E.D. Mich. Jan. 19, 2023) ...................................19

iii

*Hill v. A.O. Smith Corp.*,
   801 F.2d 217 (6th Cir. 1986) ................................................................8

*Kelly v. Georgia Pacific LLC*
   2010 WL 11579013 (E.D.N.C. Aug. 31, 2010)..................................15

*Kiriacopoulos v. Gen. Motors LLC*,
   2023 WL 2789622 (E.D. Mich. Apr. 5, 2023) ...................................18

*Kuberski v. Allied Rec. Grp.*,
   2020 WL 5230588 (N.D. Ind. Sept. 2, 2020) ....................................25

*Kuns v. Ford Motor Co.*,
   543 F. App'x 572 (6th Cir. 2013) ......................................................17

*Leon v. Cont'l AG*,
   301 F. Supp. 3d 1203 (S.D. Fla. 2017) ..............................................24

*Lessin v. Ford Motor Co.*,
   2021 WL 3810584 (S.D. Cal. Aug. 25, 2021) ....................................24

*Matanky v. Gen. Motors LLC*,
   370 F. Supp. 3d 772 (E.D. Mich. 2019) .............................................17

*McCabe v. Daimler AG*,
   948 F. Supp. 2d 1347 (N.D. Ga. 2013) ..............................................21

*McFadden v. Dryvit Sys., Inc.*,
   2004 WL 2278542 (D. Or. Oct. 8, 2004)............................................16

*In re MyFord Touch*,
   46 F. Supp. 3d 936 (N.D. Cal. 2014) .................................................21

*Padilla v. Porsche Cars N. Am., Inc.*,
   391 F. Supp. 3d 1108 (S.D. Fla. 2019) ..............................................14

*Pagliaroni v. Mastic Home Exteriors, Inc.*,
   310 F. Supp. 3d 274 (D. Mass. 2018).................................................16

*Peters v. Countrywide Home Loans, Inc.*,
   2016 WL 2869059 (D.N.J. May 17, 2016)..........................................24

*Phillips v. Philip Morris Companies Inc.*,
290 F.R.D. 476 (N.D. Ohio 2013) ......................................................................25

*Ponzio v. Mercedes Benz USA, LLC*,
447 F. Supp. 3d 194 (D.N.J. 2020) ....................................................................19

*Powell v. Subaru of Am., Inc.*,
502 F. Supp. 3d 856 (D.N.J. 2020) ....................................................................14

*Priebe v. Autobarn, Ltd.*,
240 F.3d 584 (7th Cir. 2001) ...............................................................................12

*Raymo v. FCA US LLC*,
475 F. Supp. 3d 680 (E.D. Mich. 2020) ...............................................................4

*Redmon v. Whirlpool Corp.*,
2020 WL 9396529 (N.D. Ill. Apr. 28, 2020) ......................................................15

*Republic Bank & Tr. Co. v Bear Stearns & Co.*,
683 F.3d 239 (6th Cir. 2012) .................................................................17, 18, 19

*Rodriguez v. Ford Motor Co.*,
596 F. Supp. 3d 1050 (N.D. Ill. 2022) ....................................................13, 15, 22

*Roe v. Ford Motor Co.*,
2021 WL 2529825 (E.D. Mich. June 21, 2021) (NJ) .........................................22

*Rosal v. First Fed. Bank of Cal.*,
671 F. Supp. 2d 1111 (N.D. Cal. 2009) ..............................................................18

*Rowland v. Bissell Homecare, Inc.*,
73 F.4th 177 (3d Cir. 2023) .................................................................................17

*Ruth v. Unifund CCR Partners*,
604 F.3d 908 (6th Cir. 2010) ...............................................................................10

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*
559 U.S. 393 (2010) ..............................................................................................25

*Speerly v. Gen. Motors, LLC*,
343 F.R.D. 493 (E.D. Mich. 2023) ........................................................................4

v

*Storey v. Attends Healthcare Prod., Inc.*,
   2016 WL 3125210 (E.D. Mich. June 3, 2016) ......................................................4

*Strzakowlski v. GMC*,
   2005 WL 2001912 (D.N.J. Aug. 16, 2005) .......................................................13

*Sulligan v. Ford Motor Co.*,
   2023 WL 5180330 (E.D. Mich. Aug. 11, 2023)..............................................6, 12

*Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*,
   2014 WL 1048710 (N.D. Cal. Mar. 14, 2014) .................................................13

*In re Takata Airbag Prods. Liab. Litig.*,
   2016 WL 6072406 (S.D. Fla. Oct. 14, 2016) ....................................................21

*Tucker v. Ford Motor Co.*,
   2023 WL 2662887 (E.D. Mo. Mar. 28, 2023)...................................................11

*In re Volkswagen Timing Chain Prod. Liab. Litig.*,
   2017 WL 1902160 (D.N.J. May 8, 2017)......................................................13, 20

*In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*,
   722 F.3d 838 (6th Cir. 2013) ..............................................................................3

*Withrow v. FCA US LLC*,
   2021 WL 2529847 (E.D. Mich. June 21, 2021), *amended*, 2021
   WL 9629458 (E.D. Mich. July 21, 2021) ...........................................................5

*Wood v. Carpenter*,
   101 U.S. 135 (1879)...........................................................................................10

*Wurm v. Ford Motor Co.*,
   849 F. App'x 766 (10th Cir. 2021) .....................................................................1

**State Cases**

*Coastal Leasing Corp. v. O'Neal*,
   405 S.E.2d 208 (N.C. Ct. App. 1991).................................................................15

*Dhital v. Nissan N. Am., Inc.*,
   84 Cal.App.5th 828 (2022) ................................................................................23

*Flagstaff Aff. Hous. L.P. v. Design All., Inc.*,
　223 Ariz. 320 (2010)............................................................22

*Gutierrez v. Carmax Auto Superstores Cal.*,
　19 Cal. App. 5th 1234 (2018) ............................................20

*Hansen v. Lederman*,
　759 P.2d 810 (Colo. 1988)....................................................7

*Hupp Corp. v. Metered Washer Serv.*,
　472 P.2d 816 (Or. 1970) ......................................................16

*Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*,
　929 N.E.2d 722 (Ind. 2010) ................................................24

*Safeway Stores, Inc. v. Certainteed Corp.*,
　710 S.W.2d 544 (Tex. 1986) ..................................................6

*Sterenbuch v. Goss*,
　266 P.3d 428 (Colo. App. 2011)............................................7

*Wallis v. Ford Motor Co.*,
　208 S.W.3d 153 (Ark. 2005) ................................................23

**Federal Statutes**

15 U.S.C. § 2310(d)(1)(C) ......................................................16

44 U.S.C. § 1507 ......................................................................9

28 U.S.C. § 2072(b) .................................................................5

**State Statutes**

C.R.S. § 5-1-115 ......................................................................7

**Rules**

Cal. Rule of Court 8.1115(e)(1)..............................................23

LR 16.3(a) ................................................................................7

**Regulations**

49 C.F.R. 571.216 ................................................................................9

73 Fed. Reg. 5484 (Jan. 30, 2008) ........................................................19

# INTRODUCTION

Plaintiffs' response confirms that this is a non-viable no-injury products liability case masquerading as a putative nationwide class action.  The *newest* of the 1999-2016 Ford Super Duty trucks at issue have been out of production for almost ten years.  In the several decades since the oldest of these trucks were first sold, Plaintiffs' roof-strength allegations have been exhaustively debated by automotive engineers, litigated in courts, and rejected by every factfinder to reach the merits— including three juries.  *See* ECF No. 29-2, PageID.3323; ECF No. 29-3, PageID.3336; ECF No. 29-4, PageID.3355.[1]  The Second Consolidated Class Action Complaint (SCC) merely repackages those rejected defect theories, in hopes of riding the coattails of a recent headline-grabbing award of punitive damages from a jury that was not even allowed to decide whether there was any defect.  *See* Br. Supp. Ford's Mot. to Dismiss at 13-14, ECF No. 29 ("Ford's Br."), PageID.3282-84.

Nothing in Plaintiffs' response cures the fundamental problems with this lawsuit.  They cannot rescue their overpayment theory of injury because they have safely used their trucks for years without incident and cannot plausibly allege that Ford promised them anything they did not receive.  Instead, their overpayment

---

[1] The Tenth Circuit affirmed summary judgment for Ford in a fourth case, *Wurm v. Ford Motor Co.*, 849 F. App'x 766, 770-71 (10th Cir. 2021).  Plaintiffs contend that "the merits were not reached" in *Wurm*, but that is backward—there was no evidence of any defect in that case because the plaintiff's experts were excluded as unreliable.

theory rests on the assertion—true of every part in every vehicle ever made—that Super Duty roofs could have been made stronger.  That is not a license for any lawsuit, let alone this putative nationwide class action.

Plaintiffs' claims also fail as a matter of law because all the allegedly concealed information has been publicly litigated not just in courtrooms but also in NHTSA proceedings for nearly two decades.  Indeed, Plaintiffs have built their complaint around publicly available pleadings from prior product liability litigation and articles in the national press.  Their allegations of fraud and concealment ring hollow in the face of this public debate over roof strength.

For these reasons and others stated below and in Ford's opening brief, the Court should dismiss the SCC with prejudice.

## ARGUMENT

### I.   <u>Plaintiffs received the benefit of their bargain and cannot recover damages simply because they believe their trucks could be made safer.</u>

To prove any compensable injury, Plaintiffs must show they lost the benefit of their bargain by receiving less than was promised.   Ford's Br. 16-22, PageID.3285-91.   Plaintiffs now admit that they "are not pursuing affirmative misrepresentation claims."  Pls.' Resp. to Ford's Mot. to Dismiss at 34-35, ECF No. 36 ("Pls.' Resp."), PageID.3879-80.  Yet they try to divine some unmet standard of roof strength from generic statements in advertisements.  *Id.* at 18, PageID.3863

(referring to advertising about a Safety Canopy System,[2] "serious safety standards," "high standards of durability and reliability you'd expect in a full-size pickup that's Built Ford Tough," and "an incredibly strong structure").

But none of those statements mention the roof or its relative resistance to deformation in a rollover.  So the only remaining theory is the one Plaintiffs disclaim (and for good reason): that Ford should have delivered a "perfectly safe roof."  *Id.* at 1, PageID.3846.  Because the same could be said about any part in every vehicle, that is no basis for claiming any lost benefit of the bargain here.

Cases in which an alleged defect actually interfered with plaintiffs' use of the product find no parallel here.  In *Whirlpool*, the plaintiffs alleged overpayment for their washing machines because, soon after starting normal use, "both plaintiffs noticed the smell of mold or mildew emanating from the machines and from laundry washed in the machines."  *In re Whirlpool Corp. Front-Loading Washer Prod. Liab. Litig.*, 722 F.3d 838, 846 (6th Cir. 2013).  A washing machine that actually makes clothes *smellier* is not what any buyer would bargain for.

Nor can Plaintiffs draw support from automotive cases permitting an overpayment theory of damages based on alleged defects that either interfered with

---

[2] The Safety Canopy System is a passive restraint system incorporating side-curtain airbags.  Ford's Br. 21, PageID.3290.  It does not involve the roof.

3

use of the vehicles[3] or allegedly deprived the vehicles of actually-promised characteristics.[4]  Plaintiffs did not bargain for a particular level of roof strength, and the Super Duty trucks they bought have provided reasonably safe transportation and work use since their purchase.  *See* Ford's Br. 17-18, PageID.3286-87.

## II.  Plaintiffs lack standing to pursue claims on behalf of a putative class that none of them could pursue as individuals.

Plaintiffs seek to assert claims under the laws of ***thirty*** states that bear no connection to any of their purchases.  But they cannot show any injury "fairly traceable to the defendant's allegedly unlawful conduct" in unrepresented states.

---

[3] *See Speerly v. Gen. Motors, LLC*, 343 F.R.D. 493, 500–01 (E.D. Mich. 2023) ("Each of the named plaintiffs testified that they have experienced [alleged 'hard shift' transmission defect] when driving"); *Francis v. Gen. Motors, LLC*, 504 F. Supp. 3d 659, 669, 671 (E.D. Mich. 2020) (same); *In re FCA US LLC Monostable Elec. Gearshift Litig.*, 334 F.R.D. 96, 113 (E.D. Mich. 2019), *clarified on denial of reconsideration*, 340 F.R.D. 251 (E.D. Mich. 2022) ("overwhelming majority of ordinary drivers could not reliably select intended gear settings with the monostable shifter even after repeated attempts to use it"); *Gregorio v. Ford Motor Co.*, 522 F. Supp. 3d 264, 272 (E.D. Mich. 2021) ("defect causes the transmission to slip, jerk, clash gears, and harshly engage while driving the vehicles").

[4] *See Raymo v. FCA US LLC*, 475 F. Supp. 3d 680, 687 (E.D. Mich. 2020) ("[D]efects in their aftertreatment system actually caused the trucks to emit NOx in excess of EPA emissions standards and to fall below promised fuel-economy performance."); *In re Duramax Diesel Litig.*, 298 F. Supp. 3d 1037, 1049 (E.D. Mich. 2018) (emissions defeat device); *Counts v. Gen. Motors, LLC*, 237 F. Supp. 3d 572, 582 (E.D. Mich. 2017) (same); *Crawford v. FCA US LLC*, 2021 WL 3603342, at *1 (E.D. Mich. Aug. 13, 2021) (EGR coolers "are susceptible to thermal fatigue, leading the coolers to crack over time and leak coolant"); *cf. Storey v. Attends Healthcare Prod., Inc.*, 2016 WL 3125210, at *4 (E.D. Mich. June 3, 2016) ("Plaintiffs claim that they paid a premium for incontinence products that Defendant falsely represented as being safe for long-term use.").

*Withrow v. FCA US LLC*, 2021 WL 2529847, at *9 (E.D. Mich. June 21, 2021), *amended*, 2021 WL 9629458 (E.D. Mich. July 21, 2021). Although some courts have declined to enforce bedrock standing limitations at this stage, recent Sixth Circuit law leaves no room for doubt: Plaintiffs cannot sue under the laws of states where they suffered no injury. *Fox v. Saginaw Cnty.*, 67 F.4th 284, 294 (6th Cir. 2023) (courts may not relax standing requirements simply because plaintiffs also seek to represent a putative class); *see* Ford's Br. 22-23, PageID.3291-92.

Plaintiffs try to distinguish *Fox* because it involved whether a single plaintiff could sue multiple defendants. Pls.' Resp. 21, PageID.3866. But the bedrock principle underlying *Fox* applies with equal force here: the "usual three-part test for standing applies with full force in the class-action context." 67 F.4th at 294. If a plaintiff lacks standing to assert an individual claim (against a different defendant in *Fox* or, as here, against the same defendant for violating a different state law), then she cannot manufacture standing by asserting a *class* claim. *Accord* Rules Enabling Act, 28 U.S.C. § 2072(b) (federal rules may not "abridge, enlarge or modify any substantive right.").

Plaintiffs' reliance on *Fallick* is also misplaced. As recognized in *Withrow*, *Fallick* does not permit courts to ignore obvious jurisdictional defects. *See* 2021 WL 2529847, at *6. In *Fallick*, a plaintiff sought to assert ERISA claims on behalf of a putative class that included people who participated in health insurance plans other

5

than the plaintiff's.  *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 421 (6th Cir. 1998).  But the plaintiff and putative class shared the same federal cause of action under ERISA.  Here, by contrast, Plaintiffs are asserting different causes of action under the laws of 50 states, only 20 of which are represented by a Plaintiff.  Because they never sustained injury in those thirty other states, Plaintiffs lack standing to assert nationwide claims.  *See Sulligan v. Ford Motor Co.*, 2023 WL 5180330, at *4 (E.D. Mich. Aug. 11, 2023) (dismissing claims under unrepresented states' laws for lack of standing).

### III.    <u>Plaintiffs fail to state a warranty claim.</u>

#### A.    <u>Statutes of limitations bar most Plaintiffs' claims.</u>

Most Plaintiffs' claims are time-barred because most of the vehicles at issue have been out of production for a decade or more.  Ford's Br. 24-26, PageID.3293-95.  And contrary to Plaintiffs' assertion, (Pls.' Resp. 21, PageID.3866), none of the applicable limitations periods were tolled by the discovery rule[5] or equitable tolling[6] because (1) Plaintiffs have not plausibly alleged that Ford concealed the strength of the Super Duty roof structure; and (2) Plaintiffs' defect allegations (though untrue)

---

[5] Plaintiffs concede that Illinois and Indiana do not apply discovery rule tolling to implied warranty claims.  They claim California and Texas do, but they are wrong. *Goldstein v. Gen. Motors LLC*, 517 F. Supp. 3d 1076, 1094 (S.D. Cal. 2021); *Safeway Stores, Inc. v. Certainteed Corp.*, 710 S.W.2d 544, 549 (Tex. 1986).
[6] Plaintiffs fail to allege that Ford made "affirmative efforts to delay the plaintiff's bringing suit," which many states require for equitable tolling.  *See* Ford's Br. 28 n.14, PageID.3297.  And their response makes no argument to the contrary.

have been public and widely disseminated for decades.  *See* Ford's Br. 3-14, PageID.3272-83; *id.* at 26-29, PageID.3295-98.[7]

Plaintiffs fail to show any concealment in Ford's settlement of prior product liability cases.  Plaintiffs refer to "secret settlements" and argue that Ford has concealed a defect in the Super Duty roof by compromising claims against it.  *See, e.g.*, Ps.' Resp. 2, PageID.3847; *id.* at 4, PageID.3849; *id.* at 13, PageID.3858; *id.* at 24, PageID.3869.  But compromise is not concealment, and settlement is anything but a dirty word in civil litigation.  *See, e.g.*, *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976) ("Public policy strongly favors settlement of disputes without litigation.").  In fact, the Local Rules of this Court reflect a strong public policy in favor of compromise noting that alternative dispute resolution is favored by the judges of this District.  *See* E.D. Mich. LR 16.3(a). Ford's settlement of a product liability case is no more an admission by Ford that a vehicle is defective than it is an admission by the plaintiff that the vehicle is safe.  Thus, Plaintiffs' argument that resolving prior litigation permits the inference that Ford has

---

[7] Plaintiffs state that Ford did not identify specific Plaintiffs when it argued most of Plaintiffs' fraud-based claims were untimely.  Pls.' Resp. 43 n.24, PageID.3888. Appendix A to Ford's Motion sets forth all Plaintiffs whose fraud-based claims are barred by the applicable statute of limitations.  Ford inadvertently omitted Plaintiff Marshall from the Appendix.  He bought his vehicle on October 31, 2015, and the statute of limitations for his fraud-based claims are all three years under Colorado law.  *See* C.R.S. § 5-1-115; *Hansen v. Lederman*, 759 P.2d 810, 812 (Colo. 1988); *Sterenbuch v. Goss*, 266 P.3d 428, 437 (Colo. App. 2011).

"concealed" a defect conflict with this Court's (and others') policy favoring voluntary compromises.[8]  Moreover, the settlement of a product-liability case does not strike the pleadings from the public record.  As the exhibits to the SCC reflect, the plaintiffs' defect theories in prior Super Duty cases remain accessible to the public many years later.[9]

Indeed, Plaintiffs' exhibits and the Federal Register confirm that their defect allegations were widely asserted and discoverable with due diligence well before the verdict in *Hill v. Ford*.  Although Plaintiffs repeatedly argue that timeliness is a "question for the jury," *See* Pls.' Resp. 23, PageID.3868 (quoting *Hill v. A.O. Smith Corp.*, 801 F.2d 217, 225 (6th Cir. 1986)); *id.* at 24, PageID.3868; *id.* at 43, PageID.3888, the face of their complaint belies this, *see Franklin v. Fisher*, 2017 WL 4404624, at *2 (6th Cir. May 15, 2017) (affirming dismissal where "it [was] obvious from the face of her complain that most of [plaintiff's] claims [were time] barred").

---

[8] Plaintiffs also allege concealment based on Ford's continued rejection of their defect allegations and its "insistence that roof strength is unrelated to rollover injury severity."  Pls.' Resp. 24, PageID.3869.  But good-faith disagreement with Plaintiffs is not concealment.  If a defendant were deemed to have concealed a defect for the purposes of the statute of limitations simply by refusing to agree with a plaintiff's defect theory, the statute of limitations would be meaningless.

[9] Plaintiffs of course allege no plausible tolling by misrepresentation because they "are not pursuing affirmative misrepresentation claims."  Pls.' Resp. 34-35, PageID.3879-80.

Plaintiffs do not deny the "facts" alleged in the SCC about the Super Duty roof were gathered from publicly retrievable pleadings in other cases and media accounts in publications like the *New York Times* and *Detroit News and Free Press* (some dating back to 2004). *See* ECF No. 25-5; ECF No. 25-30; ECF No. 25-32. Nor do they dispute that the debate over roof strength in heavier trucks has played out in hundreds of pages of the Federal Register, a source that Congress has deemed sufficient to provide public notice. *See* 44 U.S.C. § 1507 (publication of a document in the Federal Register "is sufficient to give notice of the contents of the document to a person subject to or affected by it"). One such document specifically listed the roof strength of a Super Duty truck from NHTSA testing showing that it had a strength-to-weight ratio of more than 1.5, which would have satisfied FMVSS 216 at that time.[10] Thus, the information providing Plaintiffs with notice of the alleged defect was not "scattered across the internet," as Plaintiffs assert, Pls.' Resp. 40, PageID.3885, but published in the official records of the United States, newspapers of general circulation, and public court dockets.

---

[10] Plaintiffs assert that the NHTSA testing did not meet FMVSS 216 because the vehicles were tested at their unloaded vehicle weight. *See* Pls.' Resp. 10, PageID.3855 n.4. But the applicable FMVSS standard prescribed testing using unloaded vehicle weight, not maximum vehicle weight. *See* 49 C.F.R. 571.216 S5. ("The applied force in Newtons is equal to 1.5 times the unloaded vehicle weight of the vehicle").

That distinguishes *Garrett v. Ohio State Univ.*, 60 F.4th 359 (6th Cir. 2023), where the plaintiffs plausibly alleged they couldn't have known about Ohio State's role in covering up sexual abuse *until* the scandal was publicized. *Id.* at 366-67.

*Ruth v. Unifund CCR Partners*, cited by Plaintiffs, supports Ford's position as well. "The publicly availability of the ostensibly concealed information supports" dismissal on statute of limitations grounds. 604 F.3d 908, 911 (6th Cir. 2010). "When individuals have 'the means of discovery in [their] power' they generally are 'held to have known it.'" *Id.* (quoting *Wood v. Carpenter*, 101 U.S. 135, 141 (1879)). Plaintiffs contend that Ford's definition of diligence is unreasonable because it would require "ongoing legal research in all state and federal documents for personal injury claims." Pls.' Resp. 45, PageID.3890. But the underlying factual information, that is, the actual requirements for and capabilities of the roofs, can be found in in the Federal Register and in NHTSA correspondence. So no tolling rescues Plaintiffs' untimely claims.

### B.   Many implied-warranty claims also fail under Ford's limited warranty.

Many of the implied-warranty claims also fail under Ford's New Vehicle Limited Warranty ("NVLW").[11] Plaintiffs do not dispute that the NVLW bars

---

[11] Plaintiffs Beck (CA), Marshall (CO), Koblasz (FL), Brock (IL), Anderson (NC), Wilson (SC), Brenda Rhodes (TX), and Stephen Rhodes (TX), bought their vehicles new and therefore subject to the NVLW. *See* SCC ¶ 43, PageID.2038; ¶ 64,

consumers from pleading class claims. Instead, they contend that striking class allegations is appropriate only when "the plaintiff will be unable to demonstrate facts supporting certification." Pls.' Resp. 29, PageID.3874. But Plaintiffs have failed to explain how they *could* "demonstrate facts supporting certification" when the NVLW expressly forbids them from bringing class claims. *See Tucker v. Ford Motor Co.*, 2023 WL 2662887, at *11 (E.D. Mo. Mar. 28, 2023) (striking class allegations based on identical warranty language).

Plaintiffs cannot distinguish *Harnden v. Ford Motor Co.*, 408 F. Supp. 2d 315 (E.D. Mich. 2005). That *Harnden* considered express rather than implied warranties does not diminish its holding that a valid repair-or-replace provision forecloses further relief. *Id.* at 321.[12]

Further, Plaintiffs Beck, Marshall, and Brock admit that they use their trucks for work.[13] Ford's Br. 29, PageID.3303. There is no factual dispute to resolve, and no basis for imposing an additional "primary purpose" requirement that does not appear in the warranty. *See, e.g.*, 2016 Model Year Ford Warranty Guide at 6, 9,

---

PageID.2044; ¶ 79, PageID.2047-48; ¶ 85, PageID.2049; ¶ 120, PageID.2057-58; ¶ 151, PageID.2065; ¶ 156, PageID.2066-67; ¶ 161, PageID.2068.

[12] Ford does not concede that Plaintiffs "are permitted to seek repair or replacement," Pls.' Resp. 36, PageID.3875, because there is no defect to repair or defective component to replace.

[13] SCC ¶ 44, PageID.2038; ¶ 65, PageID.2044; ¶ 85, PageID.2049.

https://tinyurl.com/33tc88h8 ("These implied warranties do not apply at all if you use your vehicle for business or commercial purposes.").

### C.   The implied warranty claims lack other required elements.

First, the SCC does not plausibly allege that any of the vehicles are not merchantable.  Ford's Br., 30-31, PageID.3299-3300. Plaintiffs insist in response that the vehicles do not provide safe transportation.  Pls.' Resp. 25, PageID.3870. But Plaintiffs' trucks have operated in a safe condition for, in some cases, decades. Plaintiffs assert that they are reluctant to drive their trucks now, but that is insufficient to state a claim for breach of warranty.  *See* Ford's Br. 30-31, PageID.3299-3300 (citing *Priebe v. Autobarn, Ltd.*, 240 F.3d 584 F.3d 584, 588 (7th Cir. 2001); *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 762 (E.D. Mich. 2017)). Further, *Francis v. Gen. Motors, LLC* does not support the proposition that fear of driving a vehicle based on numerous reports of a transmission defect manifesting in other vehicles was sufficient to support a claim.  Pls.' Resp. 25, PageID.3870.  In *Francis*, the plaintiffs all experienced "similar gearing issues" to those described in the incident reports.  504 F. Supp. 3d 659, 676 (E.D. Mich. 2020).[14]  That is not the

---

[14] *See Sulligan*, 2023 WL 5180330, at *8-9 (dismissing implied warranty claims based on "'concern' over driving the vehicles" and "feelings of the vehicles being 'unsafe,'" but denying motion to dismiss where plaintiffs "allege that they actually experienced a vehicle shutdown while operating the vehicle on roads, or their vehicle would not start at some point").

case here.  The trucks are fit for their ordinary purpose, as they have been providing safe transportation without incident for up to 25 years.

Second, the Arkansas, Colorado, Illinois, Indiana, South Carolina, and Texas Plaintiffs' implied warranty claims fail because pre-suit notice is required against remote manufacturers in these states.[15]   Ford's Br. 31-32, PageID.3300-01. Plaintiffs assert that the notice element has been fulfilled through the filing of this SSC, various other consumer complaints to NHTSA, and other lawsuits against Ford. Pls.' Resp. 26, PageID.3871. But Colorado law permits remote manufacturers to "raise as its own defense the buyer's failure to give timely notice to the ***immediate seller***," and Plaintiffs do not allege they gave notice to any immediate seller. *Taison Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, 2014 WL 1048710, at *9 (N.D. Cal. Mar. 14, 2014) (dismissing implied warranty claim where plaintiff failed to allege it provided notice to the immediate seller).   The Illinois and Indiana notice requirements are not satisfied by the meager allegations here of general knowledge of the defect.  *Rodriguez v. Ford Motor Co.*, 596 F. Supp. 3d 1050, 1055 (N.D. Ill. 2022) (holding that the knowledge exemption applies only when the defendant has

---

[15] None of *In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 (D.N.J. May 8, 2017), *Beck v. FCA US LLC*, 273 F. Supp. 3d 735, 756 (E.D. Mich. 2017), or *Strzakowlski v. GMC*, 2005 WL 2001912 (D.N.J. Aug. 16, 2005) suggest that pre-suit notice is not a requirement in Arkansas, Colorado, Illinois, South Carolina, or Texas. Plaintiffs cite no case law supporting their position that they gave adequate notice under Arkansas or Texas law.

knowledge of the defect as to the particular product purchased by a particular buyer); *see also Powell v. Subaru of Am., Inc.*, 502 F. Supp. 3d 856, 881 (D.N.J. 2020) (collecting cases).  And Plaintiffs are wrong that filing a lawsuit is sufficient notice under South Carolina law.  *See Flores v. FCA US LLC*, 2021 WL 1122216, at *11 (E.D. Mich. Mar. 24, 2021) (rejecting the filing of a complaint as a basis for pre-suit notice under South Carolina law); *Cox House Moving, Inc. v. Ford Motor Co.*, 2006 WL 2303182, at *5 (D.S.C. 2006)).

Third, the Florida, Illinois, North Carolina, and Oregon Plaintiffs lack the required privity to state an implied warranty claim.  Ford's Br. 32-33, PageID.3301-02.  Plaintiffs argue in response that they have properly pled privity with Ford, or that some exception applies, for the Plaintiffs who purchased vehicles in these states.  Pls.' Resp. 27-28, PageID.3872-73.  But Plaintiffs' relationships with Ford are too attenuated under the laws of these states to state an implied warranty claim.

*Florida*: Plaintiffs argue plaintiffs who purchase a vehicle from an authorized dealership are in privity with a manufacturer, Pls.' Resp. 27, PageID.3872.  But "Florida courts have dismissed breach of implied warranty claims under Florida law for lack of contractual privity where the plaintiff purchaser did not purchase a product directly from the defendant." *Padilla v. Porsche Cars N. Am., Inc.*, 391 F. Supp. 3d 1108, 1116, 1117 n.3 (S.D. Fla. 2019) (Florida law, followed by *Droesser v. Ford Motor Co.*, 2023 WL 2746782, at *15–16 (E.D. Mich. Mar. 31, 2023)).

*Illinois*:   Plaintiffs invoke an exception to the privity requirement under Illinois law that "applies when there are direct dealings between the manufacturer and the remote customer."   *Rodriguez*, 596 F. Supp. 3d at 1056.   But the advertisements allegedly viewed by Plaintiffs do not qualify as "direct dealings" between Ford and Plaintiffs under Illinois law.   *Id.* (collecting cases and stating, "courts in this district have applied the direct dealing exception only where the manufacturer has direct contact with purchaser"); *see Redmon v. Whirlpool Corp.*, 2020 WL 9396529, at \*5 (N.D. Ill. Apr. 28, 2020) (holding that allegations that plaintiff relied on advertisements and warranties was not sufficient to implicate the direct dealing exception).

*North Carolina*:  Plaintiffs assert that, even though they are not in privity with Ford, they can bring warranty claims as third-party beneficiaries of Ford's contracts with others.  The cases they cite for this proposition ultimately rely only on *Coastal Leasing Corp. v. O'Neal*, 405 S.E.2d 208 (N.C. Ct. App. 1991).  But as a North Carolina court held in *Kelly v. Georgia Pacific LLC*, despite *Coastal Leasing*, the North Carolina Supreme Court has "require[d] actual privity to state an implied-warranty claim for recovery of economic loss."   2010 WL 11579013, at \*6-7

15

(E.D.N.C. Aug. 31, 2010) (followed by *Cadena v. Am. Honda Motor Co., Inc.*, 2021 WL 9839349, at *7-8 (C.D. Cal. Mar. 10, 2021)).[16]

*Oregon*: "Under Oregon law, a plaintiff claiming breach of implied warranty who only seeks damages for economic loss 'must demonstrate privity of contract between themselves and [the defendant]'" *Pagliaroni v. Mastic Home Exteriors, Inc.*, 310 F. Supp. 3d 274, 290 (D. Mass. 2018) (citing *McFadden v. Dryvit Sys., Inc.*, 2004 WL 2278542, at *6 (D. Or. Oct. 8, 2004). The Oregon Supreme Court has held that a remote purchaser may not recover for purely economic loss upon a theory of implied warranty against the manufacturer where the purchaser bought the product from an intermediate seller. *Hupp Corp. v. Metered Washer Serv.*, 472 P.2d 816, 817-18 (Or. 1970). Thus, under Oregon law, Plaintiffs cannot pursue a warranty claim even if they are within the "distributive chain" for their vehicle.

### D.   Plaintiffs fail the MMWA numerosity requirement.

The Magnuson-Moss Warranty Act (MMWA) claim is not "cognizable" under the statute's plain language because "th[is] action is brought as a class action, and the number of named plaintiffs is less than one hundred." 15 U.S.C. § 2310(d)(1)(C). As *Droesser v. Ford Motor Co.* recognized, 2023 WL 2746792, at

---

[16] In any event, Plaintiffs concede that only a plaintiff who bought his vehicle from an authorized Ford dealership can meet the privity requirement. Thus, this claim should be dismissed as to Plaintiff Thomas, who did not purchase his truck from an authorized Ford dealership. SCC ¶ 130, PageID.2060.

*18-19 (E.D. Mich. Mar. 31, 2023), the decision in *Kuns v. Ford Motor Co.*, 543 F. App'x 572 (6th Cir. 2013), is nonbinding and incorrect. Indeed, since Ford filed its opening brief, the Third Circuit has joined the Ninth in applying the unambiguous language of the MMWA and dismissing claims that do not meet its numerosity requirement even when a plaintiff invokes jurisdiction under CAFA. *Rowland v. Bissell Homecare, Inc.*, 73 F.4th 177, 181, 184-85 (3d Cir. 2023); *see also Floyd v. Am. Honda Motor Co.*, 966 F.3d 1027, 1035 (9th Cir. 2020) (rejecting Plaintiffs' interpretation because it would "evade or override the MMWA's specific numerosity requirement"). This Court should follow those persuasive and published decisions.

## IV.   **The fraud-based claims are deficient.**

### A.   **The fraud-based claims cannot survive Rule 9(b).**

Plaintiffs demand a "more relaxed pleading burden" for omissions claims. Pls.' Resp. 32, PageID.3877. That demand ignores binding Sixth Circuit precedent. *See Republic Bank & Tr. Co. v Bear Stearns & Co.*, 683 F.3d 239, 255-56 (6th Cir. 2012) (applying same Rule 9(b) burden to fraudulent omission claim).[17] To state a fraudulent concealment claim, plaintiffs must allege "(1) precisely what was omitted; (2) who should have made a representation; (3) the content of the alleged omission and the manner in which the omission was misleading; and (4) what

---

[17] In any event, Plaintiffs' own case recognizes only "*slightly* more relaxed pleading burden." Pls.' Resp. 32, PageID.3877 (citing *Matanky v. Gen. Motors LLC*, 370 F. Supp. 3d 772, 789 (E.D. Mich. 2019)).

[defendant] obtained as a consequence of the alleged fraud." *Republic Bank*, 683

F.3d at 256.  They have failed to satisfy Rule 9(b).[18]

First, Ford didn't conceal or omit anything.  All the information Plaintiffs

offer to support their defect claims is and has been publicly available for decades

and so cannot support a concealment claim.[19]  Plaintiffs say that Ford omitted that

there was a "dangerous roof design," but that is merely Plaintiffs' opinion and

interpretation of the underlying facts that are public.  A fraudulent concealment

claim cannot survive on the allegation that a defendant concealed an opinion that it

does not have.  *See e.g.*, *Rosal v. First Fed. Bank of Cal.*, 671 F. Supp. 2d 1111, 1132

(N.D. Cal. 2009) (holding fraudulent concealment concerns the "concealment or

suppression of a material *fact*").

Second, Plaintiffs assert that they need not specify which representations they

relied on because they are asserting "omission claims and identify the misleading

representations about the safety of the Roof-Crush Vehicles."  Pls.' Resp. 35,

---

[18] Plaintiffs concede that their unjust enrichment claims must satisfy Rule 9(b).
Pls.' Resp. 42, PageID.3887.  So those claims fail with the fraud claims.  Plaintiffs
also deny the relevance of buying a vehicle from a Ford dealership.  But that issue
is dispositive under New Jersey, Oklahoma, and Washington law, because
plaintiffs must confer a *direct* benefit.  *See* Ford's Br. 46 n.32, PageID.3315.

[19] *Kiriacopoulos v. Gen. Motors LLC*, 2023 WL 2789622 (E.D. Mich. Apr. 5, 2023)
does not compel a different conclusion.  There, GM argued that it gave notice of the
defect to its dealers and NHTSA through service bulletins, but it was unclear if the
dealerships discussed the issue with customers.  Plaintiffs' defect allegations were
more widely disseminated and publicized, and not limited to internal
communications between Ford and its dealers.

PageID.3880. But they only refer to generic Ford marketing materials—none of which discuss the strength of the roofs. Moreover, Plaintiffs do not dispute that the marketing materials cited in the SSC applies to only a few Model Years of the Super Duty trucks which only a few Plaintiffs purchased. Ford's Br. 38, 38 n.27., PageID.3307; Pls.' Resp. 35-36 n.15, PageID.3880-81. This does not satisfy *Republic Bank*'s requirement that a plaintiff identify "the content of the alleged omission and the manner in which the omission was misleading."[20] 683 F.3d at 256. Thus, Plaintiffs' omission claims violate Rule 9(b) and should be dismissed.[21]

### B.   Plaintiffs do not plead facts giving rise to a duty to disclose.

Plaintiffs' response establishes no duty to disclose under Arizona, Arkansas, Illinois, North Carolina, New Jersey, South Carolina, Texas, or Utah law.

---

[20] Plaintiffs cite *Ponzio v. Mercedes Benz USA, LLC*, 447 F. Supp. 3d 194, 236 (D.N.J. 2020) and *Harrison v. GM, LLC*, 2023 WL 348962, at *7 (E.D. Mich. Jan. 19, 2023) for the proposition that these marketing materials are "ambiguous partial disclosures or statements" and that "allegations relating to certain model year vehicles support plausible allegations about a broader class of vehicles." Pls.' Resp. 35, 35 n.15, PageID.3880. But that language applies only New Jersey law—and no Plaintiff from New Jersey bought a model year truck for which SSC identified any "ambiguous partial disclosures." And in *Harrison* the bulletins at issue applied "to a broad range of classes," and—unlike here—GM did not specify which of the plaintiffs' vehicles were not covered by the bulletins. 2023 WL 348962, at *7.

[21] Plaintiffs also challenge the design process for the Super Duty truck. *See, e.g.*, Pls.' Resp. 2, 5-6, PageID.3847, 3850-51. But this is not a negligence case, and Plaintiffs do not (and cannot) allege that Ford misstated the testing it performed on their trucks or the strength or thickness of any roof component. In any event, physical testing by NHTSA showed that the roof of the 2003 F-250 met the FMVSS 216 standard. *See supra* n. 10; Federal Motor Vehicle Safety Standards; Roof Crush Resistance, 73 Fed. Reg. 5484, 5486 (Jan. 30, 2008).

*Non-Party to a Transaction.*   Plaintiffs are wrong that non-parties to a transaction may plead fraudulent concealment under Arizona law.   *See Counts v. Gen. Motors, LLC*, 606 F. Supp. 3d 678, 708 (E.D. Mich. 2022) ("being a party to a transaction is a necessary element" under Arizona law).

*Safety Risk.*   Plaintiffs assert that California, Illinois, South Carolina, and Texas impose a duty to disclose a safety defect without anything more (e.g., exclusive knowledge or a partial representation).   Pls.' Resp. 38, PageID.3883.   But California recognizes no "independent duty to disclose safety concerns that exists outside the four situations where a duty to disclose is recognized by California courts."   *Gutierrez v. Carmax Auto Superstores Cal.*, 19 Cal. App. 5th 1234, 1260 (2018).   And Plaintiffs rely in vain on *In re Volkswagen Timing Chain Prod. Liab. Litig.* for the proposition that Illinois, South Carolina, and Texas impose a duty to disclose a safety defect.   2017 WL 1902160, at *20.   The cases cited there either do not concern the laws of these states or do not discuss a duty to disclose safety defects.[22]   Thus, merely alleging a "safety risk" cannot establish a duty to disclose.

---

[22] *McCabe v. Daimler AG*, 948 F. Supp. 2d 1347, 1368-70 (N.D. Ga. 2013) was interpreting Georgia law, not Texas law.   *In re Takata Airbag Prods. Liab. Litig.*, 2016 WL 6072406, at *5 (S.D. Fla. Oct. 14, 2016), contains no discussion or suggestion of a "duty to disclose safety defects" under Illinois law.   And *Fisher v. Pelstring*, 817 F. Supp. 2d 791, 823 (D.S.C. 2011) merely states that a duty to disclose can arise in contexts other than a fiduciary relationship.

*Superior or Exclusive Knowledge.*   In arguing that Ford has superior or exclusive knowledge, Plaintiffs again ignore the pleadings and articles from which they gleaned the allegations in the SCC.  All these allegations have been matters of public record for decades.[23]  The public debate about the trucks' roof strength is widely known.  Therefore, allegations of "superior" or "exclusive" knowledge did not create a duty to disclose.  *See* Ford's Br. 41-43, PageID. 3310-12 (detailing why there is no duty to disclose under AR, NC, SC, or UT law).

*Partial Misrepresentation.*  As noted in Ford's Motion, the SCC only points to statements made with respect to MY 1999, 2009, 2010, 2011, 2013, and 2014 Super Duty trucks, which apply only to Plaintiffs Holicz, Scott, the Gneckows, Anderson, the Rhodes, Gosser, and Bright.[24]  Despite Plaintiffs' assertions, none of the statements identified in the SSC concern roof strength.  At most, the statements about being "Built Ford Tough" and having "extremely high standards of visibility"

---

[23] *In re MyFord Touch*, 46 F. Supp. 3d 936, 960 (N.D. Cal. 2014), citing only to California law, determined that the plaintiffs pled exclusive knowledge because information about capability of repair was *publicly unavailable*, unlike here.

[24] Plaintiffs assert that Connecticut, New Jersey, Oklahoma, Oregon, Alabama, California, Illinois, Iowa, Montana, and New Mexico all recognize a partial disclosure as a circumstance imposing a duty to disclose.  Pls.' Resp. 40, 40 n.20, PageID.3885.  But the only states where a partial representation has been alleged are Florida, Illinois, New Mexico, North Carolina, Texas, and Washington.  While partial disclosure may create a duty to disclose in New Jersey, North Carolina, and Illinois, but not when the relationship between the parties is as attenuated as it is here.  *See* Ford's Br. 41-42, PageID.3310-11 (citing *Rodriguez*, 596 F. Supp. 3d 1058 (IL); *Burnette v. Nicolet, Inc.*, 818 F.2d 1098, 1101 (4th Cir. 1968) (N.C.); *Roe v. Ford Motor Co.*, 2021 WL 2529825, at *9 (E.D. Mich. June 21, 2021) (NJ)).

and being structurally strong are non-actionable puffery or non-actionable opinion. Ford's Br. 39-40, PageID.3308-09.  And since Plaintiffs' trucks have been on the road and safely operating for between 7 and 25 years without any structural or durability issues related to their roofs, Ford's statements are accurate.  Therefore, no duty to disclose arises from these statements, and none of the other Plaintiffs can point to any alleged partial disclosure.

### C.   The Economic Loss Rule bars certain Plaintiffs' claims.

**Arizona**:  Arizona law prohibits tort actions for purely economic injury. Ford's Br. 47-48, PageID.3316-17.  Plaintiffs deny that the economic loss rule ("ELR") bars fraud claims for an "unreasonably dangerous" defect or "unexpected" loss or by a non-contracting party.  Pls.' Resp. 46, PageID.3891 (citing *Flagstaff Aff. Hous. L.P. v. Design All., Inc.*, 223 Ariz. 320, 324 (2010)).

Plaintiffs argue that because their tort claim concerns an unreasonable safety risk that could cause unexpected injuries, the ELR does not apply.  Pls.' Resp. 46, PageID.3891.  But here, no plaintiff has suffered any injury other than purported economic loss.  And injury in a rollover accident cannot be deemed "unexpected" in *any* vehicle.  As to Plaintiffs' second argument, Arizona's fraud exception to the ELR extends only to claims of fraudulent *inducement*, a claim with nine elements distinct from those of fraudulent concealment.  *D Stadtler 2015 Trust v. Gorrie*, 2023 WL 2503642, at *19 (D. Ariz. Mar. 14, 2023).  Thus, the Arizona ELR applies here.

**Arkansas**: Plaintiffs quibble with the terminology of *Wallis v. Ford Motor Co.*, 208 S.W.3d 153 (Ark. 2005), but offer no rebuttal to the dispositive principle under Arkansas law: common law fraud claims cannot survive where (as here) the only injury is diminution in value. *Id.* at 159; Pls.' Resp. 47, PageID.3892.

**California**:  Plaintiffs ask this Court to adhere to *Dhital v. Nissan N. Am., Inc.*, 84 Cal.App.5th 828 (2022), where the court found a fraudulent inducement exception to the ELR.  Pls.' Resp. 47, PageID.3892.  But that decision is currently on appeal, and so has no precedential force.  Cal. Rule of Court 8.1115(e)(1).  Other courts thus continue to bar fraudulent omission claims alleging only economic damages where there are no affirmative misrepresentation claims.  *See Alvarez v. Am. Honda Motor Co.*, 2023 WL 4681557, at *2-4 (C.D. Cal. Mar. 14, 2023).

**Florida**: Plaintiffs deny that Florida's economic loss rule applies to fraudulent inducement claims.  Pls.' Resp. 47-48, PageID.3892-93.  But where plaintiffs seek only diminished value damages, the economic loss rule bars fraud claims, including fraudulent inducement claims.  *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1225 (S.D. Fla. 2017). And Plaintiffs do not assert fraudulent inducement claims here.

**Indiana**: The ELR precludes tort liability for purely economic loss—that is, pecuniary loss unaccompanied by any property damage or personal injury. *Indianapolis-Marion Cty. Pub. Library v. Charlier Clark & Linard, P.C.*, 929 N.E.2d 722, 727 (Ind. 2010).  That is the case here, and other courts analyzing similar

23

claims have dismissed fraudulent concealment claims for that reason.  *See, e.g.*, *Lessin v. Ford Motor Co.*, 2021 WL 3810584, at \*16 (S.D. Cal. Aug. 25, 2021).

**New Jersey**:  Under New Jersey law, fraudulent concealment claims, like those asserted by the Plaintiffs here, are not subject to the exceptions of the New Jersey ELR, and should therefore be dismissed.  *See Peters v. Countrywide Home Loans, Inc.*, 2016 WL 2869059, at \*5 (D.N.J. May 17, 2016).  Plaintiffs did not, and cannot, plead a claim for fraudulent inducement.

**North Carolina**:  *Foodbuy, LLC v. Gregory Packaging, Inc.*, 987 F.3d 102 (4th Cir. 2021) was limited to overruling the district court's application of the ELR to a NCUDTPA claim in a dispute between two commercial entities.  *See id.* at 121.  Nowhere does *Foodbuy* discuss the factual scenario contemplated by *Bussian v. DaimlerChrysler Corp.*, 411 F. Supp. 2d 614, 627 (M.D.N.C. 2006), where the ELR barred claims because "the only damage alleged [was] damage to the product itself."  Courts continue to prohibit NCUDTPA claims where the plaintiff does not allege any loss outside of those related to the defective product.  *See, e.g.*, *Kuberski v. Allied Rec. Grp.*, 2020 WL 5230588, at \*6-7 (N.D. Ind. Sept. 2, 2020).

## V.  The Arkansas, Iowa, and South Carolina consumer protection statutes bar those putative class claims.

Under Justice Stevens' controlling opinion in *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, federal courts must apply a state-law class-action restriction if it is "so intertwined with a state right or remedy that it functions to

define the scope of the state-created right." 559 U.S. 393, 423 (2010). The Arkansas, Iowa, and South Carolina restrictions appear *in the very state statutes* that create the consumer protection right. Ford's Br. 49-50, PageID.3318-19; *see also Phillips v. Philip Morris Companies Inc.*, 290 F.R.D. 476, 481 (N.D. Ohio 2013) ("[T]he fact that [a class action] limitation is contained within the very statute that provides consumers with an avenue for relief from unfair sales practices demonstrates that it impacts substantive rights."). That makes these restrictions intertwined with the consumer protection claims—unlike the "rule in New York's procedural code about when to certify class actions brought under any source of law" at issue in *Shady Grove*. *Shady Grove*, 559 U.S. at 436 (Stevens, J.). This Court thus should reject Plaintiffs' request to ignore the plain language of those statutes.

## CONCLUSION

The Court should dismiss the SCC with prejudice.

Dated: August 17, 2023                    Respectfully submitted,

                                          By: */s/ Derek J. Linkous*

Perry W. Miles IV                         Stephanie A. Douglas (P70272)
Brian D. Schmalzbach                      Derek J. Linkous (P82268)
**McGuireWoods LLP**                      **Bush Seyferth PLLC**
Gateway Plaza                             100 W. Big Beaver Rd. Suite 400
800 East Canal Street                     Troy, MI 48084
Richmond, VA 23219-3916                   (248) 822-7800
Telephone: (804) 775-1039                 douglas@bsplaw.com
pmiles@mcguirewoods.com                   linkous@bsplaw.com
bschmalzbach@mcguirewoods.com