UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| IN RE FORD SUPER DUTY ROOF-CRUSH LITIGATION | No. 4:22-cv-12079-FKB-DRG |
| | **JURY TRIAL DEMANDED** |

## DEFENDANT FORD MOTOR COMPANY'S ANSWER TO PLAINTIFFS' SECOND CONSOLIDATED CLASS ACTION COMPLAINT

## I.   INTRODUCTION

1.      Ford denies the allegations in Paragraph 1 about the roof structure in Ford Super Duty trucks, which are reasonably safe and not defective.  Ford admits that that it sold Super Duty trucks but denies any allegation that those trucks contain a defect or that Ford knew of such a defect.  The remainder of Paragraph 1 contains legal conclusions regarding the alleged duties of a manufacturer and therefore no response is required.  To the extent a further response is required Ford states that the laws in various States impose certain duties on product manufacturers but denies that the allegations in Paragraph 1 properly characterize any such duty.

2.      Ford denies the allegations in Paragraph 2.

3.      Ford denies the allegations in Paragraph 3 as they pertain to Ford.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 3 and therefore denies them.

4.      Ford admits that what appears to be an image of a Ford Super Duty vehicle is embedded in Paragraph 4, but Plaintiffs have not alleged any facts regarding such vehicle or any crash in which it may have been involved.  Ford denies that the roof design of that Super Duty truck is defective or presents an unreasonable risk of injury in rollover collisions.  Ford is without sufficient knowledge or information to form a belief as to the truth of the remaining allegations in Paragraph 4, and therefore denies them.

5.      Ford denies the allegations in Paragraph 5.

6.      Ford denies the allegations in Paragraph 6 as they pertain to Ford.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 6, and therefore denies them.

7.      Ford denies the allegations in Paragraph 7.

8.      Ford denies the allegations in Paragraph 8.

9.      Ford denies the allegations in Paragraph 9.

10.     Responding to Paragraph 10, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 10 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability. Ford denies all remaining allegations in Paragraph 10.

11.     Ford denies the allegations in Paragraph 11.

12.     Ford denies the allegations in Paragraph 12.

2

13. Ford denies the allegations in Paragraph 13.

14. Ford denies the allegations in Paragraph 14.

15. Ford denies the allegations in Paragraph 15.

16. Ford denies the allegations in Paragraph 16.

17. Responding to Paragraph 17, Ford denies Plaintiffs' characterization of the verdict in *Hill v. Ford*. Every factfinder to consider the merits of similar design defect claims in the Super Duty line of vehicles (model years 1999-2016) has ruled for Ford. That includes a jury verdict for Ford in the Circuit Court of Boone County, Missouri, entered on February 20, 2009; a jury verdict for Ford in the Oklahoma County District Court entered on October 19, 2015; a summary judgment for Ford entered by the United States District Court for the District of Kansas on April 1, 2020, which the United States Court of Appeals for the Tenth Circuit affirmed on April 13, 2021; and a summary judgment for Ford entered by the State Court of Fulton County, Georgia, on July 11, 2023. *Hill v. Ford* was tried twice. During the first trial in 2018, the judge declared a mistrial and incorrectly ruled that Ford's attorneys had violated pre-trial rulings while presenting evidence. The court entered a sanctions order that did not merely prevent Ford from defending its interests in the second trial; it affirmatively "established" six critical issues for the Hill plaintiffs, without any findings by the jury. Thus, in the second trial, the jury was instructed, as part of the erroneous "death penalty" sanction, to find that the 2002 Ford F-250

was defective and that Ford's design amounted to a willful, and reckless, and wanton disregard for life.  During the second trial in August 2022, a jury found that Pep Boys (the party that sold the tires on the vehicle involved in the rollover accident) was responsible for 30% of the damages, and Ford, as a direct result of the sanctions order prohibiting Ford from presenting its defense, was responsible for 70% of the damages, resulting in $16.8 million in damages being apportioned to Ford. The jury subsequently awarded punitive damages against Ford in the amount of $1.7 billion. Ford has filed an appeal in the Georgia Court of Appeals.  Ford denies all remaining allegations in Paragraph 17.

18.    Ford admits that it has been sued as a result of roll-over crashes involving its vehicles.  Ford denies that the incidents identified by the plaintiffs' lawyers in *Hill v. Ford* were substantially similar to the incident at issue in that case or reflect a defect in any Ford vehicle.  Ford denies all remaining allegations in Paragraph 18.

19.    Ford denies the allegations in Paragraph 19 to the extent they pertain to Ford.  To the extent they concern other vehicle manufacturers, Ford is without sufficient knowledge or information to form a belief as to the truth of the allegations in Paragraph 19, and therefore denies them.

20.    Ford denies that the roof structure of 1999-2016 Ford Super Duty trucks is defective.  Ford further denies that Ford made any misrepresentation regarding the

safety of the roof structure of the subject vehicles.  Thus, Ford states that Plaintiffs have not suffered any injury, nor did they overpay for their vehicles.  Ford denies all remaining allegations in Paragraph 20.

21.     Ford denies the allegations of misconduct in Paragraph 21.  The remainder of Paragraph 21 states legal conclusions to which no response is required. To the extent a further response is required, Ford denies those allegations and denies that Plaintiffs are entitled to damages under any statute or at common law.

22.     Ford denies the allegations of misconduct in Paragraph 22.  The remainder of Paragraph 22 states legal conclusions to which no response is required. To the extent a further response is required, Ford denies those allegations and denies that Plaintiffs are entitled to reimbursement under any statute or at common law.

23.     Ford denies the allegations in Paragraph 23.

24.     Ford denies the allegations in Paragraph 24.

## II.     JURISDICTION

25.     Responding to Paragraph 25, Ford does not contest that this Court has jurisdiction over this Action pursuant to the Class Action Fairness Act.  Ford denies the remaining allegations in Paragraph 25 and denies that Plaintiffs can satisfy the requirements to certify a class.

26.     Paragraph 26 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford admits that it is headquartered

in Michigan and does business in Michigan.  Ford denies the remaining allegations in Paragraph 26.

### III.   VENUE

27.    Paragraph 27 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford admits that it transacts business and is headquartered in the Eastern District of Michigan.

### IV.   PARTIES

**A.    Plaintiffs**

**1.    Justin Sager (Alabama)**

28.    Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 28, and therefore denies them.

29.    Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 29, and therefore denies them.

30.    Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 30, and therefore denies them.

31. Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 31, and therefore denies them.

32. Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 32, and therefore denies them.

**2. Sarah Ellers (Arizona)**

33. Ford denies that the roof structure in the 2003 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 33, and therefore denies them.

34. Ford denies that the roof structure in the 2003 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 34, and therefore denies them.

35. Ford denies that the roof structure in the 2003 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 35, and therefore denies them.

36. Ford denies that the roof structure in the 2003 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 36, and therefore denies them.

37.     Ford denies that the roof structure in the 2003 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 37, and therefore denies them.

**3.      John Stowers (Arkansas)**

38.     Ford denies that the roof structure in the 2007 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 38, and therefore denies them.

39.     Ford denies that the roof structure in the 2007 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 39, and therefore denies them.

40.     Ford denies that the roof structure in the 2007 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 40, and therefore denies them.

41.     Ford denies that the roof structure in the 2007 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 41, and therefore denies them.

42.     Ford denies that the roof structure in the 2007 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 42, and therefore denies them.

**4.      Steven Beck (California)**

43.      Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 43, and therefore denies them.

44.      Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 44, and therefore denies them.

45.      Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 45, and therefore denies them.

46.      Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford also denies that the 2015 Ford F-350 suffers from any defect that could "easily result in a rollover collision."  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 46, and therefore denies them.

47.      Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 47, and therefore denies them.

### 5.       David Braden (California)

48.      Ford denies that the roof structure in the 2006 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 48, and therefore denies them.

49.      Ford denies that the roof structure in the 2006 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 49, and therefore denies them.

50.      Ford denies that the roof structure in the 2006 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 50, and therefore denies them.

51.      Ford denies that the roof structure in the 2006 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 51, and therefore denies them.

52.      Ford denies that the roof structure in the 2006 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 52, and therefore denies them.

**6.    John Schabinger and Edward Blaine Schabinger (California)**

53.    Ford denies that the roof structure in the 2004 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 53, and therefore denies them.

54.    Ford denies that the roof structure in the 2004 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 54, and therefore denies them.

55.    Ford denies that the roof structure in the 2004 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 55, and therefore denies them.

56.    Ford denies that the roof structure in the 2004 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 56, and therefore denies them.

57.    Ford denies that the roof structure in the 2004 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 57, and therefore denies them.

### 7.    Eric "Ivan" Tellez (California)

58.    Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 58, and therefore denies them.

59.    Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 59, and therefore denies them.

60.    Ford denies that the roof structure in the 2016 Ford F-350 or 2000 Ford F-350 suffer from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 60, and therefore denies them.

61.    Ford denies that the roof structure in the 2016 Ford F-350 or 2000 Ford F-350 suffer from any defect or that Ford made any misrepresentation regarding such vehicles. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 61, and therefore denies them.

62.    Ford denies that the roof structure in the 2016 Ford F-350 or 2000 Ford F-350 suffer from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 62, and therefore denies them.

63. Ford denies that the roof structure in the 2016 Ford F-350 or 2000 Ford F-350 suffer from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 63, and therefore denies them.

**8.      Donald Marshall (Colorado)**

64. Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 64, and therefore denies them.

65. Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 65, and therefore denies them.

66. Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 66, and therefore denies them.

67. Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 67, and therefore denies them.

68.     Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 68, and therefore denies them.

**9.     Brendan Lawless (Connecticut)**

69.     Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 69, and therefore denies them.

70.     Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 70, and therefore denies them.

71.     Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 71, and therefore denies them.

72.     Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 72, and therefore denies them.

73.     Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 73, and therefore denies them.

### 10. Douglas Holicz (Florida)

74. Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 74, and therefore denies them.

75. Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 75, and therefore denies them.

76. Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 76, and therefore denies them.

77. Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 77, and therefore denies them.

78. Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 78, and therefore denies them.

**11.     John Koblasz (Florida)**

79.     Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 79, and therefore denies them.

80.     Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 80, and therefore denies them.

81.     Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 81, and therefore denies them.

82.     Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 82, and therefore denies them.

83.     Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 83, and therefore denies them.

84.     Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 84, and therefore denies them.

### 12. William Brock (Illinois)

85. Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 85, and therefore denies them.

86. Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 86, and therefore denies them.

87. Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 87, and therefore denies them.

88. Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 88, and therefore denies them.

89. Ford denies that the roof structure in the 2016 Ford F-250 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 89, and therefore denies them.

### 13.    Ryan Scott (Illinois)

90.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 90, and therefore denies them.

91.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 91, and therefore denies them.

92.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 92, and therefore denies them.

93.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 93, and therefore denies them.

94.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 94, and therefore denies them.

**14. Richard Powell (Indiana)**

95. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 95, and therefore denies them.

96. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 96, and therefore denies them.

97. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 97, and therefore denies them.

98. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 98, and therefore denies them.

99. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 99, and therefore denies them.

**15.     Dwaine Stutler Jr. (Iowa)**

100.   Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 100, and therefore denies them.

101.   Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 101, and therefore denies them.

102.   Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 102, and therefore denies them.

103.   Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 103, and therefore denies them.

104.   Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 104, and therefore denies them.

**16.    Jesse Porter (Montana)**

105.    Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 105, and therefore denies them.

106.    Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 106, and therefore denies them.

107.    Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 107, and therefore denies them.

108.    Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 108, and therefore denies them.

109.    Ford denies that the roof structure in the 2015 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 109, and therefore denies them.

**17.    Mark Willard (New Jersey)**

110.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 110, and therefore denies them.

111.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 111, and therefore denies them.

112.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 112, and therefore denies them.

113.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 113, and therefore denies them.

114.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 114, and therefore denies them.

**18.    Michael and Gail Gneckow (New Mexico)**

115.    Ford denies that the roof structure in the 1999 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 115, and therefore denies them.

116.    Ford denies that the roof structure in the 1999 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 116, and therefore denies them.

117.    Ford denies that the roof structure in the 1999 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 117, and therefore denies them.

118.    Ford denies that the roof structure in the 1999 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 118, and therefore denies them.

119.    Ford denies that the roof structure in the 1999 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 119, and therefore denies them.

### 19. Mark Anderson (North Carolina)

120. Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 120, and therefore denies them.

121. Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 121, and therefore denies them.

122. Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 122, and therefore denies them.

123. Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 123, and therefore denies them.

124. Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 124, and therefore denies them.

### 20.    Jonathan Taylor (North Carolina)

125.    Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 125, and therefore denies them.

126.    Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 126, and therefore denies them.

127.    Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 127, and therefore denies them.

128.    Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 128, and therefore denies them.

129.    Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 129, and therefore denies them.

**21.    Kevin Thomas (North Carolina)**

130.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 130, and therefore denies them.

131.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 131, and therefore denies them.

132.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 132, and therefore denies them.

133.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 133, and therefore denies them.

134.    Ford denies that the roof structure in the 2002 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 134, and therefore denies them.

**22.    William Griffit (Oklahoma)**

135.    Ford denies that the roof structure in the 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 135, and therefore denies them.

136.    Ford denies that the roof structure in the 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 136, and therefore denies them.

137.    Ford denies that the roof structure in the 2000 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 137, and therefore denies them.

138.    Ford denies that the roof structure in the 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 138, and therefore denies them.

139.    Ford denies that the roof structure in the 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 139, and therefore denies them.

### 23.    Desmond Rains (Oregon)

140.    Ford denies that the roof structure in the 1999 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 140, and therefore denies them.

141.    Ford denies that the roof structure in the 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 141, and therefore denies them.

142.    Ford denies that the roof structure in the 1999 Ford F-350 or 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 142, and therefore denies them.

143.    Ford denies that the roof structure in the 1999 Ford F-350 or 2000 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 143, and therefore denies them.

144.    Ford denies that the roof structure in the 1999 Ford F-350 or 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 144, and therefore denies them.

145.   Ford denies that the roof structure in the 1999 Ford F-350 or 2000 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 145, and therefore denies them.

### 24.   Ryan Robbins (Oregon)

146.   Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 146, and therefore denies them.

147.   Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 147, and therefore denies them.

148.   Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 48, and therefore denies them.

149.   Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 149, and therefore denies them.

150.   Ford denies that the roof structure in the 2008 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 150, and therefore denies them.

### 25.   Everett Sylvester Wilson III (South Carolina)

151.   Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 151, and therefore denies them.

152.   Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 152, and therefore denies them.

153.   Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 153, and therefore denies them.

154.   Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 154, and therefore denies them.

155.   Ford denies that the roof structure in the 2016 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 155, and therefore denies them.

**26.    Brenda L. Rhodes (Texas)**

156.    Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 156, and therefore denies them.

157.    Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 157, and therefore denies them.

158.    Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 158, and therefore denies them.

159.    Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 159, and therefore denies them.

160.    Ford denies that the roof structure in the 2013 Ford F-250 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 160, and therefore denies them.

27.     **Stephen T. Rhodes (Texas)**

161.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 161, and therefore denies them.

162.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 162, and therefore denies them.

163.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 163, and therefore denies them.

164.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 164, and therefore denies them.

165.    Ford denies that the roof structure in the 2011 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 165, and therefore denies them.

### 28. Greg Duenes (Utah)

166. Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 166, and therefore denies them.

167. Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 167, and therefore denies them.

168. Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 168, and therefore denies them.

169. Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 169, and therefore denies them.

170. Ford denies that the roof structure in the 2008 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 170, and therefore denies them.

### 29. Curtis Bright (Washington)

171. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 171, and therefore denies them.

172. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 172, and therefore denies them.

173. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 173, and therefore denies them.

174. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 174, and therefore denies them.

175. Ford denies that the roof structure in the 2000 Ford F-350 suffers from any defect. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 175, and therefore denies them.

**30.    Catherine Gosser (Washington)**

176.    Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 176, and therefore denies them.

177.    Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 177, and therefore denies them.

178.    Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect or that Ford made any misrepresentation regarding such vehicle.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 178, and therefore denies them.

179.    Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 179, and therefore denies them.

180.    Ford denies that the roof structure in the 2014 Ford F-350 suffers from any defect.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 180, and therefore denies them.

**B.    Defendant**

181.    Ford admits that it is a corporation organized under the laws of the State of Delaware and its principal place of business is in Dearborn Michigan.

35

182.   Ford admits that it designs in part, manufactures in part, and distributes Ford automobiles to independent authorized dealerships throughout the United States, who in turn sell or lease them to the public.  Ford further admits that it has been described as one of the "Big Three" automobile manufacturers in the United States. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 182 and therefore denies them.

183.   Ford admits that it designs in part, manufactures in part, assembles, in part, and distributes Ford automobiles to independent authorized dealerships throughout the United States and in other countries, who in turn sell or lease them to the public.  Ford admits that it advertises or promotes these vehicles and issues owner's manuals, warranty booklets, and advertisements, including for its Super Duty trucks.  To the extent any further response is required, Ford denies the remaining allegations in Paragraph 183.

184.   The allegations in Paragraph 184 consist of legal conclusions to which no response is required.  To the extent a response is required, Ford denies that an agency relationship exists between Ford and Ford authorized independent dealerships, denies that Ford has the ability to control authorized Ford dealers, and denies the remaining allegations in Paragraph 184.

36

## V. FACTUAL ALLEGATIONS

**A. Ford Super Duty trucks, including the Roof-Crush Risk Vehicles, are immensely profitable.**

185. Ford states that the content of the materials referenced in Paragraph 185 speaks for itself and denies any allegations inconsistent therewith. By way of further answer, Ford states that the 1999 – 2016 Ford Super Duty trucks were sold at least five years before the comments referenced in Paragraph 185. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 185, and therefore denies them.

**B. Ford marketed the Roof-Crush Risk Vehicles as safe and reliable because it knew that these attributes were material to consumers.**

186. The allegations in Paragraph 186 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies that Ford made any misrepresentation regarding the safety of the roof structure of the subject vehicles. Ford also denies the remaining allegations in Paragraph 186 as they pertain to Ford. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 186, and therefore denies them.

187. Ford states that the content of the material referenced in Paragraph 187 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the content in the material is an actionable representation or misrepresents the safety of the roof structure in 1999 Ford Super Duty trucks. Ford is without sufficient

37

knowledge or information to admit or deny the remaining allegations in Paragraph 187, and therefore denies them.

188.    Ford states that the content of the material referenced in Paragraph 188 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the content in the material is an actionable representation or misrepresents the safety of the roof structure in 2009 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 188.

189.    Ford states that the content of the material referenced in Paragraph 189 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the content in this material is an actionable representation or misrepresents the safety of the roof structure in 2009 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 189.

190.    Ford states that the content of the material referenced in Paragraph 190 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the content in the material is an actionable representation or misrepresents the safety of the roof structure in 2010 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 190.

191.    Ford states that the content of the material referenced in Paragraph 191 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the content in the material is an actionable representation or misrepresents the safety

of the roof structure in 2011 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 191.

192.   Ford states that the material referenced in Paragraph 192 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the content in the material is an actionable representation or misrepresents the safety of the roof structure in 2011 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 192.

193.   Ford denies that the 2012 Ford Super Duty is unreasonably dangerous in rollover collisions.  The material referenced in Paragraph 193 speaks for itself, and Ford denies any allegation inconsistent therewith.  Ford denies that the content of the material is an actionable representation or misrepresents the safety of the roof structure in 2012 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 193.

194.   Ford states that the material referenced in Paragraph 194 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the content of the material is an actionable representation or misrepresents the safety of the roof structure in 2012 Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 194.

195.   Ford denies that the 2013 Ford Super Duty is unreasonably dangerous in rollover collisions.  The material referenced in Paragraph 195 speaks for itself,

and Ford denies any allegation inconsistent therewith. Ford denies that the content of the material is an actionable representation or misrepresents the safety of the roof structure in 2013 Ford Super Duty trucks. Ford denies all remaining allegations in Paragraph 195.

196. Ford states that the material referenced in Paragraph 196 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the content of the material is an actionable representation or misrepresents the safety of the roof structure in 2013 Ford Super Duty trucks. Ford is without sufficient knowledge or information to admit or deny the remaining allegation in Paragraph 196 and therefore denies them.

197. Ford states that the material referenced in Paragraph 197 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the content of the material is an actionable representation or misrepresents the safety of the roof structure in 2013 Ford Super Duty trucks. Ford denies all remaining allegations in Paragraph 197.

198. Ford states that the material referenced in Paragraph 198 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the content of the material is an actionable representation or misrepresents the safety of the roof structure in 2014 Ford Super Duty trucks. Ford denies all remaining allegations in Paragraph 198.

199. Ford states that the materials referenced in Paragraph 199 speak for themselves and denies any allegation inconsistent therewith. Ford denies that the content of these materials are actionable representations or that it misrepresented the safety or durability of the roof structure in Ford Super Duty trucks. Ford further states that the subject Super Duty trucks have been out of production for anywhere from two decades to more than seven years. Thus, their current value is not determined by MSRP. Ford is without sufficient knowledge or information to admit or deny the remaining allegation in Paragraph 199 and therefore denies them.

200. Ford denies the allegations in Paragraph 200 as they pertain to Ford. Ford is without sufficient knowledge or information to admit or deny the remaining allegation in Paragraph 200 and therefore denies them.

## C. None of the Roof-Crush Risk Vehicles are covered under Ford's new vehicles and powertrain warranties.

201. Paragraph 201 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the materials referenced in Paragraph 201 speak for themselves and denies any allegation inconsistent therewith.

202. Paragraph 202 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the materials referenced in Paragraph 202 speak for themselves and denies any allegation inconsistent therewith.

41

**D.      The Roof-Crush Risk is an extraordinary safety hazard.**

203.   Ford states that the materials referenced in Paragraph 203 speak for themselves and denies any allegation inconsistent therewith.  Ford denies that the roof design of the subject Super Duty trucks is defective or presents an unreasonable risk of injury in rollover collisions.   Ford is without sufficient knowledge or information to admit or deny the remaining allegation in Paragraph 203 and therefore denies them.

204.   Ford admits that embedded in Paragraph 204 are what appear to be images of Ford Super Duty trucks, but Plaintiffs have not alleged any facts regarding such vehicles or any crash in which they may have been involved.  Ford denies that the roof design for these Super Duty trucks is defective or presents an unreasonable risk of injury in rollover collisions.   Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 204 and therefore denies them.

205.   Ford denies the allegations in Paragraph 205.   Every factfinder to consider the merits of similar design defect claims in the Super Duty line of vehicles (model years 1999-2016) has ruled for Ford. That includes a jury verdict for Ford in the Circuit Court of Boone County, Missouri, entered on February 20, 2009; a jury verdict for Ford in the Oklahoma County District Court entered on October 19, 2015; a summary judgment for Ford entered by the United States District Court for the

42

District of Kansas on April 1, 2020, which the United States Court of Appeals for the Tenth Circuit affirmed on April 13, 2021; and a summary judgment for Ford entered by the State Court of Fulton County, Georgia, on July 11, 2023.

206. Ford denies the allegations in Paragraph 206.

207. Ford admits that, in Paragraph 207, Plaintiffs have quoted attorney argument from a brief publicly filed in *Ott v. Ford Motor Company* in October 2005. Ford denies that such argument accurately reflects the design and development of the PHN-131 roof. Ford denies all remaining allegations in Paragraph 207.

208. Ford admits that, in Paragraph 208, Plaintiffs have quoted attorney argument from a brief publicly filed in *Ott v. Ford Motor Company* in October 2005. Ford denies that such argument accurately reflects the design and development of the PHN-131 roof. Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year. The allegations in Paragraph 208 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous

43

or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 208.

209.  Ford admits that, in Paragraph 209, Plaintiffs have quoted attorney argument from a brief publicly filed in *Ott v. Ford Motor Company* in October 2005. Ford denies that such argument accurately reflects the design and development of the PHN-131 roof.  Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 209 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 209.

210.  Ford admits that, in Paragraph 210, Plaintiffs have quoted attorney argument from a brief publicly filed in *Ott v. Ford Motor Company* in October 2005. Ford denies that such argument accurately reflects the design and development of the PHN-131 roof.  Ford states that designing a vehicle and its thousands of

44

component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 210 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 210.

211.  Ford denies Plaintiffs' characterization of the verdict in *Hill v. Ford*. Every factfinder to consider the merits of similar design defect claims in the Super Duty line of vehicles (model years 1999-2016) has ruled for Ford. That includes a jury verdict for Ford in the Circuit Court of Boone County, Missouri, entered on February 20, 2009; a jury verdict for Ford in the Oklahoma County District Court entered on October 19, 2015; a summary judgment for Ford entered by the United States District Court for the District of Kansas on April 1, 2020, which the United States Court of Appeals for the Tenth Circuit affirmed on April 13, 2021; and a summary judgment for Ford entered by the State Court of Fulton County, Georgia, on July 11, 2023.  *Hill v. Ford* was tried twice.  During the first trial in 2018, the

45

judge declared a mistrial and incorrectly ruled that Ford's attorneys had violated pre-trial rulings while presenting evidence. The court entered a sanctions order that did not merely prevent Ford from defending its interests in the second trial; it affirmatively "established" six critical issues for the *Hill* plaintiffs, without any findings by the jury. Thus, in the second trial, the jury was instructed, as part of the erroneous "death penalty" sanction, to find that the 2002 Ford F-250 was defective and that Ford's design amounted to a willful, and reckless, and wanton disregard for life. During the second trial in August 2022, a jury found that Pep Boys (the party that sold the tires on the vehicle involved in the rollover accident) was responsible for 30% of the damages, and Ford, as a direct result of the sanctions order prohibiting Ford from presenting its defense, was responsible for 70% of the damages, resulting in $16.8 million in damages being apportioned to Ford. The jury subsequently awarded punitive damages against Ford in the amount of $1.7 billion. Ford has filed an appeal in the Georgia Court of Appeals. Ford denies all remaining allegations in Paragraph 211.

212. Ford admits that it has been sued as a result of roll-over crashes involving its vehicles. Ford denies that the incidents identified by the plaintiffs' lawyers in their argument in the *Hill v. Ford* pretrial order were substantially similar to the incident at issue in that case or reflect a defect in any Ford vehicle. Ford denies all remaining allegations in Paragraph 212.

46

213.    Responding to Paragraph 213, Ford states that its public comments to NHTSA speak for themselves and denies any characterization inconsistent with those statements.    Ford admits that the National Highway Traffic Safety Administration (NHTSA), automotive engineers, manufacturers like Ford, and many others (including the plaintiff's bar and the consulting witnesses they hire) have been publicly debating roof strength in heavy trucks in rulemaking proceedings since 1989.  When NHTSA decided in 1991 to expand FMVSS 216 to include trucks with a GVWR of 6,000 pounds or less, Ford had supported including a broader range of vehicles than NHTSA ultimately decided upon, to include trucks with a GVWR of 8,500 pounds or less.  Ford denies all remaining allegations in Paragraph 213.

214.    Responding to Paragraph 214, Ford admits that the National Highway Traffic Safety Administration (NHTSA), automotive engineers, manufacturers like Ford, and many others (including the plaintiff's bar and the consulting witnesses they hire) have been publicly debating roof strength in heavy trucks in rulemaking proceedings since 1989.  Ford states that its public comments to NHTSA speak for themselves and denies any characterization inconsistent with those statements.  Ford admits that there was insufficient evidence to determine that stiffer roof strength requirements would enhance the safety of heavy trucks.  Indeed, when NHTSA decided in 1991 to expand FMVSS 216 to include trucks with a GVWR of 6,000 pounds or less, Ford had supported including a broader range of vehicles than

NHTSA ultimately decided upon, to include trucks with a GVWR of 8,500 pounds or less. Ford denies all remaining allegations in Paragraph 214.

215. Ford denies the allegations in Paragraph 215.

**E.      Ford knew of the Roof-Crush Risk and concealed it from Plaintiffs and Class Members.**

216. Ford denies the allegations in Paragraph 216.

**1.      Ford knew the relationship between roof strength and rollover injury severity before the Roof-Crush Risk Vehicles were developed.**

217. Ford states that the content of the material referenced in Paragraph 217 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the roof structure and occupant protection system of a 1960 Ford Falcon passenger car are substantially similar to that of the subject Ford Super Duty trucks. Ford further denies that such testing shows any defect in the roof structure of the subject Super Duty trucks. Ford denies all remaining allegations in Paragraph 217.

218. Ford states that the content of the material referenced in Paragraph 218 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the roof structure and occupant protection system of a 1960 Ford Falcon passenger car are substantially similar to that of the subject Ford Super Duty trucks. Ford further denies that such testing shows any defect in the roof structure of the subject Super Duty trucks. Ford denies all remaining allegations in Paragraph 218.

219.   Ford states that the content of the material referenced in Paragraph 219 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the roof structure and occupant protection system of a 1964 Ford Country Squire station wagon are substantially similar to that of the subject Ford Super Duty trucks. Ford further denies that such testing shows any defect in the roof structure of the subject Super Duty trucks.  Ford denies all remaining allegations in Paragraph 219.

220.   Ford states that the content of the material referenced in Paragraph 220 speaks for itself and denies any allegation inconsistent therewith.  Ford further notes that the author of the article referenced in support of this Paragraph has never worked for Ford and has been sued in the past for misleading demonstrations about vehicle safety.  Ford denies that the roof structure and occupant protection system of Ford vehicles from the late 1960s are substantially similar to that of the subject Ford Super Duty trucks.  Ford denies all remaining allegations in Paragraph 220.

221.   Ford states that the content of the material referenced in Paragraph 221 speaks for itself and denies any allegation inconsistent therewith.  Ford denies that the roof structure and occupant protection system of Ford vehicles from the late 1960s at issue in the memorandum are substantially similar to that of the subject Ford Super Duty trucks. Ford further notes that, since 1968, research has shown that seatbelt use drastically reduces the risk of injury to occupants in rollover collisions. Moreover, since the late 1960's, the automotive research community has learned

more about the concept of occupant crash safety in rollover crashes, and this information further refutes Plaintiffs' allegations. Ford denies all remaining allegations in Paragraph 221.

222. Ford states that the content of the material referenced in Paragraph 222 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the roof structure and occupant protection system of Ford vehicles from the late 1960s at issue in the memorandum are substantially similar to that of the subject Ford Super Duty trucks. Ford further notes that, since 1968, research has shown that seatbelt use drastically reduces the risk of injury to occupants in rollover collisions. Ford denies all remaining allegations in Paragraph 222.

181. Ford states that the content of the material referenced in Paragraph 181 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the roof structure and occupant protection system of Ford vehicles from the late 1960s at issue in the memorandum are substantially similar to that of the subject Ford Super Duty trucks. Ford further notes that, since 1968, research has shown that seatbelt use drastically reduces the risk of injury to occupants in rollover collisions. Ford denies all remaining allegations in Paragraph 181.

223. Ford states that the content of the material referenced in Paragraph 223 speaks for itself and denies any allegation inconsistent therewith. Ford is without

sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 223 and therefore denies them.

224. Ford states that the content of the material referenced in Paragraph 224 speaks for itself and denies any allegation inconsistent therewith. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 224 and therefore denies them.

225. Ford states that the content of the material referenced in Paragraph 225 speaks for itself and denies any allegation inconsistent therewith. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 225 and therefore denies them.

226. Ford states that the content of the material referenced in Paragraph 226 speaks for itself and denies any allegation inconsistent therewith. Ford further states that the test procedure ultimately adopted by NHTSA was an appropriate method for evaluating roof strength. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 226 and therefore denies them.

227. Ford admits that it was a member of the Automobile Manufacturers association. Ford further states that the test procedure ultimately adopted by NHTSA was an appropriate method for evaluating roof strength. Ford denies the remaining allegations in Paragraph 227.

51

228. Ford states that its public comments to NHTSA in April 1971 speak for themselves. Ford denies all remaining allegations in Paragraph 228 and denies that it acted in any manner "like Big Tobacco" or "contradicted its own science."

229. Ford states that the content of the material referenced in Paragraph 229 speaks for itself and denies any allegation inconsistent therewith. Ford further states that the test procedure ultimately adopted by NHTSA was an appropriate method for evaluating roof strength. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 229 and therefore denies them.

230. Ford states that the content of the material referenced in Paragraph 230 speaks for itself and denies any allegation inconsistent therewith. Ford denies that FMVSS 216, as adopted by NHTSA, represented a "watered down version." Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 230 and therefore denies them.

231. Ford states that the content of the material referenced in Paragraph 231 speaks for itself and denies any allegation inconsistent therewith. Ford states that an extensive body of science has shown that factors other than roof strength influence roof damage and occupant injury in a crash. By way of example, testing has shown that the highest neck loading in a rollover collision is caused by the initial ground impact, not subsequent deformation to the roof. In addition, injuries *other than* head and neck injuries represent the majority of injuries that may be sustained by a

52

vehicle's occupants in a rollover crash.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 231 and therefore denies them.

232.   Ford states that the content of the material referenced in Paragraph 232 speaks for itself and denies any allegation inconsistent therewith.  Ford states that an extensive body of literature has shown that factors other than roof strength influence roof damage and occupant injury in a crash. Testing has shown that the highest neck loading in a rollover collision is caused by the initial ground impact, not subsequent deformation to the roof.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 232 and therefore denies them.

233.   Ford states that the content of the material referenced in Paragraph 233 speaks for itself and denies any allegation inconsistent therewith.  Ford states that an extensive body of literature has shown that factors other than roof strength influence roof damage and occupant injury in a crash.  Testing has shown that the highest neck loading in a rollover collision is caused by the initial ground impact, not subsequent deformation to the roof.  Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 233 and therefore denies them.

234.   Ford admits that its vehicles are equipped with strong roof structures. Ford states that the content of the material referenced in Paragraph 234 speaks for itself and denies any allegation inconsistent therewith. Ford further notes that the

53

author of the article referenced in support of this Paragraph has never worked for Ford and has been sued in the past for misleading demonstrations about vehicle safety.  Except as expressly admitted, Ford denies the allegations in Paragraph 234

**2.      Ford's ownership of Volvo provided further evidence of the importance of roof strength to vehicle safety.**

235.   Ford admits the allegations in Paragraph 235.

236.   Responding to Paragraph 236, Ford states that the roof structure for the PHN-131 platform was designed before Ford owned Volvo.  In addition, Volvo did not manufacture a vehicle which was competitive with the Super Duty line of trucks – Volvo designed and manufactured different types of vehicles with vastly different "use cases."  Notwithstanding this point, engineering and safety personnel of not only Ford and Volvo, but also those of all auto manufacturers, are subject to the same laws of physics, the same laws of crash mechanics, and the same principals which govern the safety of vehicle occupants involved in rollover crashes.  Within this context, Ford admits that it later shared technology with Volvo, such as its safety canopy system to protect occupants in a rollover, and Volvo shared technology with Ford, such as its technology for pedestrian protection.  Except as expressly admitted, Ford denies the allegations in Paragraph 236.

237.   Ford states that the content of the material referenced in Paragraph 237 speaks for itself and denies any allegation inconsistent therewith.  To the extent any

further response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 237 and therefore denies them.

238. Ford states that the content of the material referenced in Paragraph 238 speaks for itself and denies any allegation inconsistent therewith. To the extent any further response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 238 and therefore denies them.

239. Ford states that the content of the material referenced in Paragraph 239 speaks for itself and denies any allegation inconsistent therewith. To the extent any further response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 239 and therefore denies them.

240. Responding to Paragraph 240, Ford states that engineers at Volvo emphasized the importance of protecting occupants in rollover collisions, including in the design of roof structure; however, like Ford, Volvo also recognized a systems approach to occupant safety which included an FMVSS 208 compliant occupant restraint system which was incapable of preventing occupant engagement with vehicle structure in certain rollover crashes. Engineers at Ford also emphasized the importance of occupant protection in rollovers and pioneered technology in accident avoidance (preventing rollovers from happening) and occupant protection to enhance occupant safety in rollover crashes. Except as expressly admitted, Ford denies the allegations in Paragraph 240.

55

241.   Ford states that the content of the material referenced in Paragraph 241 speaks for itself and denies any allegation inconsistent therewith.  To the extent a further response is required, Ford states that engineers at Volvo emphasized the importance of protecting occupants in rollover collisions, including in the design of roof structure; however, like Ford, Volvo also recognized a systems approach to occupant safety which included an FMVSS 208 compliant occupant restraint system which was incapable of preventing occupant engagement with vehicle structure in certain rollover crashes.  Engineers at Ford also emphasized the importance of occupant protection in rollovers and pioneered technology in accident avoidance (preventing rollovers from happening) and occupant protection to enhance occupant safety in rollover crashes.  Except as expressly admitted, Ford denies the allegations in Paragraph 241.

242.   Ford states that the content of the material referenced in Paragraph 242 speaks for itself and denies any allegation inconsistent therewith.  To the extent a further response is required, Ford states that engineers at Volvo emphasized the importance of protecting occupants in rollover collisions, including in the design of roof structure; however, like Ford, Volvo also recognized a systems approach to occupant safety which included an FMVSS 208 compliant occupant restraint system which was incapable of preventing occupant engagement with vehicle structure in certain rollover crashes.  Engineers at Ford also emphasized the importance of

occupant protection in rollovers and pioneered technology in accident avoidance (preventing rollovers from happening) and occupant protection to enhance occupant safety in rollover crashes.  Except as expressly admitted, Ford denies the allegations in Paragraph 242.

243.   Ford states that the content of the material referenced in Paragraph 243 speaks for itself and denies any allegation inconsistent therewith.  To the extent a further response is required, Ford denies the allegations in Paragraph 243.

**3.    Despite its knowledge that roof strength was integral to preventing serious injury and death from rollover accidents, Ford ignored the importance of roof strength when designing the Roof-Crush Risk Vehicles.**

244.   Ford admits that it sold PN96 pickup trucks and PHN131 heavy trucks in the 1990s.  Although the PHN131 platform included F-Series heavy trucks in a wide range of different configurations and builds, those vehicles had a GVWR greater than 8,500 lbs.

245.   Ford denies the allegation in Paragraph 245 insofar as not all model years from 1999 to 2016 for each of the F-250, F-350, F-450, and F-550 Super Duties are PHN131 Vehicles.  The P356 platform replaced the PHN131 platform for the 2008 model year.  The P473 platform then replaced the P356 platform for the 2011 model year.

246.   Ford admits the allegations in Paragraph 246.

247.   Ford states that the content of the material referenced in Paragraph 247 speaks for itself and denies any allegation inconsistent therewith.  To the extent a further response is required, Ford states that NHTSA applied the roof crush standard to light trucks up to 6,000 lb GVWR because it needed additional time to assess the feasibility of applying the standard to light trucks with higher GVWRs.

248.   Responding to Paragraph 248, Ford admits that after 1991 it used FMVSS 216 as a guide for trucks with a GVWR over 6,000 and up to 8,500 lbs, even though NHTSA exempted those vehicles from the standard.  Ford denies all remaining allegations in Paragraph 248.

249.   Paragraph 249 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford states that the text of 49 C.F.R. § 571.216a speaks for itself and denies any allegations that are inconsistent with the text of the regulation.   To the extent a response is required to the remaining allegations in Paragraph 249, Ford admits that NHTSA issued a revised FMVSS 216 standard on May 12, 2009, after years of public debate.  That standard currently applies to passenger cars, MPVs, trucks, and buses with a GVWR of 10,000 lbs. or less. All of Ford's vehicle lines comply with this, and other, regulatory requirements; however, the revised FMVSS 216a never applied to the subject line of Super Duty trucks (model years 1999 – 2016).

58

250. Paragraph 250 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of 49 C.F.R. § 571.216a speaks for itself and denies any allegations that are inconsistent with the text of the regulation. That standard currently applies to passenger cars, MPVs, trucks, and buses with a GVWR of 10,000 lbs. or less but never applied to the subject line of Super Duty trucks (model years 1999 – 2016).

251. Ford denies the allegations in Paragraph 251.

252. Responding to Paragraph 252, Ford admits that the doors, roof, pillars, roof rails, windshield header, and rear header are components of the body structure of the vehicle. Ford denies all remaining allegations in Paragraph 252.

253. Responding to Paragraph 253, Ford admits that Mr. Barthelemy was part of the engineering team that addressed the target for roof strength on the PHN131 program, along with CAE engineers, management for the PHN131 program, and Ford's Automotive Safety Office. Ford denies all remaining allegations in Paragraph 253.

254. Responding to Paragraph 254, Ford admits that Mr. Barthelemy was part of the engineering team that addressed the target for roof strength on the PHN 131 program, along with CAE engineers, management for the PHN 131 program, and Ford's Automotive Safety Office. As a result of those discussions, they

59

determined that the PHN 131 should have roof strength similar to the PN 96. Except as expressly admitted, Ford denies the allegations in Paragraph 254.

255. Responding to Paragraph 255, Ford admits that Mr. Barthelemy was part of the engineering team that addressed the target for roof strength on the PHN 131 program, along with CAE engineers, management for the PHN 131 program, and Ford's Automotive Safety Office. As a result of those discussions, roof strength targets were selected in accordance with the Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status. Except as expressly admitted, Ford denies the allegations in Paragraph 255.

256. Responding to Paragraph 256, Ford admits that Mr. Barthelemy was part of the engineering team that discussed the target for roof strength on the PHN 131 program, along with CAE engineers, management for the PHN 131 program, and Ford's Automotive Safety Office. As a result of those discussions, they used FMVSS 216 as a target for the strength of the PHN 131 roof, though NHTSA exempted the vehicle from that standard. Except as expressly admitted, Ford denies the allegations in Paragraph 256.

257. Ford denies the allegations in Paragraph 257.

258. Responding to Paragraph 258, Ford admits that Mr. Barthelemy was aware that rollover collisions can occur in any vehicle. Ford denies all remaining allegations in Paragraph 258.

259.   Responding to Paragraph 259, Ford admits that Mr. Vanker was aware that rollover collisions can occur in any vehicle.   Ford denies all remaining allegations in Paragraph 259.

260.   Responding to Paragraph 260, Ford states that computer-aided engineering testing, as demonstrated by Ford's Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status, showed Ford that the PHN131 roof was reasonably safe and crashworthy and assured Ford that, given the high-level of correlation, physical testing was unnecessary to satisfy Ford's internal safety goals for the PHN 131 program.   Ford denies all remaining allegations in Paragraph 260.

261.   Ford states that the content of the material referenced in Paragraph 261 speaks for itself and denies any allegation inconsistent therewith.   Computer-aided engineering testing, Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status, showed Ford that the PHN131 roof was reasonably safe and crashworthy and assured Ford that, given the high-level of correlation, physical testing was unnecessary to satisfy Ford's internal safety goals for the PHN 131 program.   Ford denies all remaining allegations in Paragraph 261.

262.   Ford states that the content of the material referenced in Paragraph 262 speaks for itself and denies any allegation inconsistent therewith.   Computer-aided engineering testing, Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status, showed Ford that the PHN 131 roof was reasonably safe

and crashworthy and assured Ford that, given the high-level of correlation, physical testing was unnecessary to satisfy Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 262.

263. Ford states that the content of the material referenced in Paragraph 263 speaks for itself and denies any allegation inconsistent therewith. To the extent a further response is required, computer-aided engineering testing, Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status, showed Ford that the PHN 131 roof was reasonably safe and crashworthy and assured Ford that, given the high-level of correlation, physical testing was unnecessary to satisfy Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 263.

264. Ford denies the allegations in Paragraph 264.

265. Responding to Paragraph 265, Ford admits that computer-aided engineering testing, Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status, showed Ford that the PHN 131 roof was reasonably safe and crashworthy and assured Ford that, given the high-level of correlation, physical testing was unnecessary to satisfy Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 265.

266. Ford states that the content of the material referenced in Paragraph 266 speaks for itself and denies any allegation inconsistent therewith. To the extent a

further response is required, Ford admits that memoranda from 1994 and 1995 were sent to Mr. Barthelemy regarding CAE analysis of roof designs for the PHN 131. Ford states that computer-aided engineering testing showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program.

267. Ford states that the content of the material referenced in Paragraph 267 speaks for itself and denies any allegation inconsistent therewith. To the extent a further response is required, Ford states that the allegations in Paragraph 267 selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. The final recommendation of the October 11, 1994 memorandum was to continue to explore the roof design. Ford further states that computer-aided engineering testing showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 267.

268. Ford states that the content of the material referenced in Paragraph 268 speaks for itself and denies any allegation inconsistent therewith. To the extent a further response is required, Ford states that the allegations in Paragraph 268 selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. The final recommendation of the October 26, 1994 memorandum was to continue to explore the design concept for the PHN 131 roof

63

in terms of design iteration of width and cross section of the proposed roof bow. Ford further states that computer-aided engineering testing showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 268.

269. Ford states that the content of the material referenced in Paragraph 269 speaks for itself and denies any allegation inconsistent therewith. To the extent a further response is required, Ford states that the allegations in Paragraph 269 selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Each of the CAE analyses described in the January 19, 1995 memorandum exceeded the design target roof strength for the platform. The final recommendation of the January 19, 1995 memorandum was to continue to update the PHN 131 super cab model and explore the concept in terms of design iteration of width and cross section of the proposed roof bow. Ford further states that computer-aided engineering testing showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 269.

270. Ford states that the content of the material referenced in Paragraph 270 speaks for itself and denies any allegation inconsistent therewith. To the extent a further response is required, Ford states that the allegations in Paragraph 270

selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Each of the CAE analyses described in the January 19, 1995 memorandum exceeded the design target roof strength for the platform. The final recommendation of the January 19, 1995 memorandum was to continue to update the PHN 131 super cab model and explore the concept in terms of design iteration of width and cross section of the proposed roof bow. Ford further states that computer-aided engineering testing showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 270.

271. Responding to Paragraph 271, Ford states that the allegations in Paragraph 271 selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Computer-aided engineering testing, Analytical Sign-Off for PHN-131 CP Design, April 1996, Structural Safety Status, showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program. Ford denies all remaining allegations in Paragraph 271.

272. Ford states that the content of the material referenced in Paragraph 272 speaks for itself and denies any allegation inconsistent therewith. Ford denies that the roof structure of the PHN131 was dangerously weak.

65

273.   Ford states that the content of the material referenced in Paragraph 273 speaks for itself and denies any allegation inconsistent therewith.  To the extent a further response is required, Ford states that the April 1996 Analytical Sign-Off for the PHN 131 involved the design of the confirmation prototype for the PHN 131 program.

274.   Ford states that the content of the material referenced in Paragraph 274 speaks for itself and denies any allegation inconsistent therewith.

275.   Ford states that the content of the material referenced in Paragraph 275 speaks for itself and denies any allegation inconsistent therewith.

276.   Responding to Paragraph 276, Ford states that it is not aware of a copy of the particular CAE test in existence almost twenty-eight years later.

277.   Ford admits the allegations in Paragraph 277.

278.   Ford admits that the result of the test referenced in Paragraph 278 was approximately 9,800 lbs.  Ford denies all remaining allegations in Paragraph 278.

279.   Ford admits that it used the maximum Unloaded Vehicle Weight when performing FMVSS 216 testing.  Ford denies all remaining allegations in Paragraph 279.

280.   Ford states that the content of the material referenced in Paragraph 280 speaks for itself and denies any allegation inconsistent therewith.  Responding further to Paragraph 280, Ford states that the "Over 8500 lbs Pickup – Super Cab"

had a maximum unloaded vehicle weight of 7,969 lbs, and NHTSA exempted the PHN 131 from testing under FMVSS 216. Ford denies all remaining allegations in Paragraph 280.

281. Ford states that the content of the material referenced in Paragraph 281 speaks for itself and denies any allegation inconsistent therewith. Responding further to Paragraph 281, Ford states that the "Over 8500 lbs Pickup – Super Cab" had a maximum unloaded vehicle weight of 7,969 lbs, and NHTSA exempted the PHN 131 from testing under FMVSS 216. Ford denies all remaining allegations in Paragraph 281.

282. Ford states that the content of the material referenced in Paragraph 282 speaks for itself and denies any allegation inconsistent therewith. Ford states that the F-250 S/C 4X4 Long Box and F-250 S/C 4X4 PDB 56" CA had a listed maximum UVW of 7700 lbs, but other F-250 S/Cs had different maximum UVWs. Ford denies all remaining allegations in Paragraph 282.

283. Responding to Paragraph 283, Ford states that NHTSA exempted the PHN 131 from testing under FMVSS 216. Ford denies all remaining allegations in Paragraph 283.

284. Responding to Paragraph 284, Ford states that NHTSA exempted the PHN 131 from testing under FMVSS 216. Ford denies all remaining allegations in Paragraph 284.

285.   Responding to Paragraph 285, Ford states that NHTSA exempted the PHN 131 from testing under FMVSS 216.   Computer-aided engineering testing showed Ford that the PHN 131 roof was reasonably safe, crashworthy, and satisfied Ford's internal safety goals for the PHN 131 program.   Ford denies all remaining allegations in Paragraph 285.

**4.      Ford reduced the roof strength of the Roof-Crush Risk Vehicles to save money.**

286.   Ford states that the content of the material referenced in Paragraph 286 speaks for itself and denies any allegation inconsistent therewith.   The referenced statements did not refer to any changes in the roof structure of the PHN 131.   Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing.   Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.   The allegations in Paragraph 286 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.   Ford specifically denies that any changes made to the roof structure of the PHN-131 made

68

the truck unreasonably dangerous or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 286.

287.   Ford states that the content of the material referenced in Paragraph 287 speaks for itself and denies any allegation inconsistent therewith.  Ford admits that on July 12, 1996 Ford authorized a new design of the windshield header which involved the removal of the front header outer from the PHN131 vehicle's design. Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing.  Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 287 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 287.

288. Ford states that the content of the material referenced in Paragraph 288 speaks for itself and denies any allegation inconsistent therewith. Ford admits that on August 8, 1999, Ford authorized a windshield header inner minimum thickness of 1.07 mm for the PHN-131. Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing. Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year. The allegations in Paragraph 288 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability. Ford denies all remaining allegations in Paragraph 288.

289. Ford states that the content of the material referenced in Paragraph 289 speaks for itself and denies any allegation inconsistent therewith. Ford admits that on November 27, 1995, it authorized a roof bow minimum thickness of 0.8 mm for

the PHN-131.  Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing.    Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 289 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 289.

290.   Ford states that the content of the material referenced in Paragraph 290 speaks for itself and denies any allegation inconsistent therewith.  Ford admits that on August 10, 1999, it approved roof bow minimum thickness of 0.74 mm for the PHN-131.  Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing.   Responding

71

further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year. The allegations in Paragraph 290 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability. Ford denies all remaining allegations in Paragraph 290.

291. Ford states that the content of the material referenced in Paragraph 291 speaks for itself and denies any allegation inconsistent therewith. Ford admits that on October 15, 1998, it authorized an A-Pillar minimum thickness of 2.35mm for the PHN-131, which is more than 1 mm thicker than the A-Pillar of the PN96 F-150. Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing. Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of

the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 291 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability.  Ford denies all remaining allegations in Paragraph 291.

292.   Ford states that the content of the material referenced in Paragraph 292 speaks for itself and denies any allegation inconsistent therewith.  Ford admits that on March 30, 1999, it authorized an A-pillar minimum thickness of 2.2 mm for the PHN-131, which is 1 mm thicker than the A-Pillar of the PN96 F-150.  Ford did so in conjunction with a redesign of the door hinge nut plate which cost an estimated $200,000 for tooling.  Before the redesign was approved, Ford completed CAE structural and durability analysis on the redesign.  Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing.  Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model

vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year.  The allegations in Paragraph 292 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed.  Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability. Ford denies all remaining allegations in Paragraph 292.

293.   Ford denies the allegations in Paragraph 293.

294.   Ford states that the content of the material referenced in Paragraph 294 speaks for itself and denies any allegation inconsistent therewith.  Ford admits that on December 4, 1996 it authorized the use of mild steel for the Super Cab rear door front vertical beam to improve manufacturability and "fit and finish" concerns.  Ford also admits that Ford generically referred to the Super Cab rear door front vertical beam as the "strainer" or "floating B-pillar," and the Super Cab was designed so that loads would be transferred to the C Pillar and the side doors, which are structurally reinforced to act like a B pillar.  Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing.

Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year. The allegations in Paragraph 294 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability. Ford denies all remaining allegations in Paragraph 294.

295. Ford states that the content of the material referenced in Paragraph 295 speaks for itself and denies any allegation inconsistent therewith. Ford admits that on June 15, 1999, it authorized a rear door front vertical beam minimum thickness of 1.2 mm. Before the redesign was approved, Ford completed FEA results showed that the redesign would pass federal requirements and Ford's internal standards. Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing. Responding further, Ford states that designing a vehicle and its thousands of component parts is an iterative process

75

and that, as with other model vehicles and components thereof, the roof structure of the PHN-131 Super Duty truck developed as part of the design process before the launch of the first PHN-131 truck in the 1999 model year. The allegations in Paragraph 295 mischaracterize the development of the PHN-131 roof, do not accurately reflect the context in which the roof developed, and/or selectively omit information such that the allegations do not reflect the totality of the subject matters being discussed. Ford specifically denies that any changes made to the roof structure of the PHN-131 made the truck unreasonably dangerous or represented a tradeoff between safety and profitability. Ford denies all remaining allegations in Paragraph 295.

296. Ford denies the allegations in Paragraph 296.

297. Responding to Paragraph 297, Ford states that it is not aware of test data still in existence twenty-five years after the launch of the PHN131 platform. Roof crush resistance testing of PHN-131 and P356 production trucks has shown that the roof structure in the subject trucks performs well and consistent with Ford's pre-production computer-aided engineering testing. Ford denies all remaining allegations in Paragraph 297.

298. Ford denies the allegations in Paragraph 298.

299. Responding to Paragraph 299, Ford states that an extensive body of literature has shown that factors other than roof strength influence roof damage and

occupant injury in a crash. Testing has shown that the highest neck loading in a rollover collision is caused by the initial ground impact, not subsequent deformation to the roof. Ford denies the remaining allegations in Paragraph 299.

300. Ford denies the allegations in Paragraph 300 and further states that the design of the roof structure and fuel system of the Ford Pinto is substantially dissimilar to that of the Super Duty trucks at issue here.

301. Ford admits that it has been sued as a result of roll-over crashes involving its vehicles. Ford denies that the incidents identified by the plaintiffs' lawyers in *Hill v. Ford* were substantially similar to the incident at issue in that case or reflect a defect in any Ford vehicle. Ford denies all remaining allegations in Paragraph 301.

302. Ford denies the allegations in Paragraph 302.

303. Ford denies that the roof structure of 1999-2016 Ford Super Duty trucks is defective. Ford further denies that Ford made any misrepresentation regarding the safety of the roof structure of the subject vehicles. Thus, Ford states that Plaintiffs have not suffered any ascertainable loss, nor did they overpay for their vehicles. Ford denies all remaining allegations in Paragraph 303.

**5.      Ford could have designed Roof-Crush Risk Vehicles with a stronger, safer roof.**

304. Ford states the content of the material referenced in Paragraph 304 speaks for itself and denies any allegation inconsistent therewith.

77

305.   Ford states the content of the material referenced in Paragraph 305 speaks for itself and denies any allegation inconsistent therewith.   Responding further to Paragraph 305, Ford states that strength-to-weight ratio, as opposed to a vehicle's empirical roof strength, is a function of the vehicle's unloaded weight and Super Duty trucks are the heaviest vehicles Ford produces.   As NHTSA has explained with respect to SWR, what is necessary to meet the need for safety and is practicable for one type or size of vehicle may not be necessary or reasonable, practicable and appropriate for another type or size of vehicle.   Ford denies all remaining allegations in Paragraph 305.

306.   Responding to Paragraph 306, Ford admits that strength and weight can affect the performance of a vehicle in a crash but denies that a roof with a higher strength-to-weight ratio reduces the risk of injury to occupants in rollover crashes. Ford denies all remaining allegations in Paragraph 306.

307.   Responding to Paragraph 307, Ford states that it formed an Enhanced Roof Strength Project or "Big Bang" research team to study new and emerging technologies for roof structure to meet anticipated changes to FMVSS 216.   Ford denies all remaining allegations in Paragraph 307.

308.   Ford states the content of the material referenced in Paragraph 308 speaks for itself and denies any allegation inconsistent therewith.   Responding further to Paragraph 308, Ford states that the 2009 F-150 was the first vehicle to

78

incorporate certain new concepts addressing roof / structure design and construction which were investigated by the Enhanced Roof Strength Project or "Big Bang" team. The brochure for the 2009 F-150 states that "The New F-150 sets a higher safety standard by introducing more accident avoidance technology and passenger protection systems than any pickup before it. Standard AdvanceTrac with RSC (Roll Stability Control), Safety Canopy System with roll-fold side-curtain airbags, and high-strength safety cage structure work together in this remarkably safe truck. We're confident this is the safest F-150 yet." Ford denies all remaining allegations in Paragraph 308.

309. Ford states the content of the material referenced in Paragraph 309 speaks for itself and denies any allegation inconsistent therewith.

310. Ford denies the allegations in Paragraph 310.

311. Ford denies the allegations in Paragraph 311.

312. Ford denies the allegations in Paragraph 312.

**F. All class members could have been made aware of the Roof-Crush Risk at the point of sale.**

313. Paragraph 313 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 313 as they pertain to Ford. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 313 and therefore denies them.

79

## VI.    TOLLING OF THE STATUTE OF LIMITATIONS

### A.    The Discovery Rule justifies tolling.

314.    Ford denies the allegations in Paragraph 314.

315.    Responding to Paragraph 315, Ford denies Plaintiffs' characterization of the verdict in *Hill v. Ford*.  Every factfinder to consider the merits of similar design defect claims in the Super Duty line of vehicles (model years 1999-2016) has ruled for Ford. That includes a jury verdict for Ford in the Circuit Court of Boone County, Missouri, entered on February 20, 2009; a jury verdict for Ford in the Oklahoma County District Court entered on October 19, 2015; a summary judgment for Ford entered by the United States District Court for the District of Kansas on April 1, 2020, which the United States Court of Appeals for the Tenth Circuit affirmed on April 13, 2021; and a summary judgment for Ford entered by the State Court of Fulton County, Georgia, on July 11, 2023.  *Hill v. Ford* was tried twice. During the first trial in 2018, the judge declared a mistrial and incorrectly ruled that Ford's attorneys had violated pre-trial rulings while presenting evidence.  The court entered a sanctions order that did not merely prevent Ford from defending its interests in the second trial; it affirmatively "established" six critical issues for the *Hill* plaintiffs, without any findings by the jury.  Thus, in the second trial, the jury was instructed, as part of the erroneous "death penalty" sanction, to find that the 2002 Ford F-250 was defective and that Ford's design amounted to a willful, and

reckless, and wanton disregard for life. During the second trial in August 2022, a jury found that Pep Boys (the party that sold the tires on the vehicle involved in the rollover accident) was responsible for 30% of the damages, and Ford, as a direct result of the sanctions order prohibiting Ford from presenting its defense, was responsible for 70% of the damages, resulting in $16.8 million in damages being apportioned to Ford. The jury subsequently awarded punitive damages against Ford in the amount of $1.7 billion. Further, Paragraph 315 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 315 as they pertain to Ford. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 315 and therefore denies them.

316. Paragraph 316 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 316 as they pertain to Ford. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 316 and therefore denies them.

317. Paragraph 317 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 317 as they pertain to Ford. Ford is without sufficient knowledge or

information to admit or deny the remaining allegations in Paragraph 317 and therefore denies them.

**B. Estoppel justifies tolling.**

318. Paragraph 318 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 318 as they pertain to Ford. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 318 and therefore denies them.

319. Ford denies the allegations in Paragraph 319.

320. Ford denies the allegations in Paragraph 320.

321. Paragraph 321 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 321 as they pertain to Ford.

## VII. CLASS ALLEGATIONS

322. Paragraph 322 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 322 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 322, and therefore denies them.

82

323. Paragraph 323 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 323 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 323, and therefore denies them.

324. Paragraph 324 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 324 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 324, and therefore denies them.

325. Paragraph 325 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 325 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 325, and therefore denies them.

326. Paragraph 326 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in

Paragraph 326 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 326, and therefore denies them.

327. Paragraph 327 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 327 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 327, and therefore denies them.

328. Paragraph 328 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 328 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 328, and therefore denies them.

329. Paragraph 329 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 329 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is

without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 329, and therefore denies them.

330. Paragraph 330 contains legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 330 as they pertain to Ford and denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 330, and therefore denies them.

## VIII.  CLAIMS

**A.    Nationwide Claims**

### COUNT I

### VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)

**(Alleged by Plaintiffs on behalf of the Nationwide Class or, alternatively, on behalf of each state-specific Subclass)**

331-347. The Court has dismissed the claims asserted against Ford in Count I by all Plaintiffs and all proposed classes of Plaintiffs. (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 331 through 347.

## COUNT II

## FRAUDULENT CONCEALMENT
### (COMMON LAW)

### (Alleged by Plaintiffs on behalf of the Nationwide Class or, alternatively, on behalf of each state-specific Subclass)

348.   Ford restates and incorporates by reference all responses as though fully set forth herein.

349.   The Court has dismissed the putative nationwide-class Fraudulent Concealment claim with respect to the 30 unrepresented states and Arkansas (ECF No. 57).  Accordingly, no response is required regarding those claims.  To the extent a response is required for those, or any remaining claims, the allegations in Paragraph 349 contain legal conclusions to which no response is required.  To the extent any further response is required, Ford denies the allegations in Paragraph 349 as they pertain to Ford and Ford denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification.

350.   The Court has dismissed the putative nationwide-class Fraudulent Concealment claim with respect to the 30 unrepresented states and Arkansas (ECF No. 57).  Accordingly, no response is required regarding those claims.  To the extent a response is required for those, or any remaining claims, the allegations in Paragraph 350 contain legal conclusions to which no response is required.  To the extent any further response is required, Ford denies the allegations in Paragraph 350

as they pertain to Ford and Ford denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification.

351. Ford denies the allegations in Paragraph 351.

352. Ford denies the allegations in Paragraph 352.

353. Ford denies the allegations in Paragraph 353.

354. Ford denies the allegations in Paragraph 354.

355. Ford denies the allegations of misconduct in Paragraph 355. The remainder of Paragraph 355 states legal conclusions to which no response is required. To the extent a further response is required, Ford denies Plaintiffs' characterization of Ford's obligations under the TREAD Act and denies any remaining allegations in Paragraph 355.

356. Ford denies the allegations in Paragraph 356.

357. Ford denies the allegations of misconduct in Paragraph 357. The remainder of Paragraph 357 states legal conclusions to which no response is required. To the extent a further response is required, Ford denies those allegations.

358. Ford denies the allegations of misconduct in Paragraph 358. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 358, and therefore denies them.

87

359. Ford denies the allegations of misconduct in Paragraph 359. Ford is without sufficient knowledge or information to admit or deny the remaining allegations in Paragraph 359, and therefore denies them.

360. Ford denies the allegations in Paragraph 360.

361. Ford denies the allegations in Paragraph 361.

## COUNT III

### UNJUST ENRICHMENT
### (COMMON LAW)

**(Alleged by Plaintiffs on behalf of the Nationwide Class or, alternatively, on behalf of each state-specific Subclass)**

362. Ford restates and incorporates by reference all responses as though fully set forth herein.

363. The Court has dismissed the putative nationwide-class Unjust Enrichment claim with respect to the 30 unrepresented states. (ECF No. 57). Accordingly, no response is required regarding those claims. To the extent a response is required for those, or any remaining claims, the allegations in Paragraph 363 contain legal conclusions to which no response is required. To the extent any further response is required, Ford denies the allegations in Paragraph 363 as they pertain to Ford and Ford denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification.

364. The Court has dismissed the putative nationwide-class Unjust Enrichment claim with respect to the 30 unrepresented states. (ECF No. 57). Accordingly, no response is required regarding those claims.  To the extent a response is required for those, or any remaining claims, the allegations in Paragraph 364 contain legal conclusions to which no response is required.  To the extent any further response is required, Ford denies the allegations in Paragraph 364 as they pertain to Ford and Ford denies that Plaintiffs have satisfied the requirements of Federal Rule of Civil Procedure 23 for class certification.

365. Ford denies the allegations in Paragraph 365.

366. Ford denies the allegations in Paragraph 366.

367. Ford denies the allegations in Paragraph 367.

368. Ford denies the allegations in Paragraph 368.

369. Ford denies the allegations in Paragraph 369.

370. Ford denies the allegations in Paragraph 370.

371. Ford denies the allegations in Paragraph 371.

**B.     State-Specific Claims**

**1.     Alabama**

## COUNT IV

## VIOLATION OF THE ALABAMA DECEPTIVE TRADE PRACTICES ACT
## (73 P.S. § 201-1, *et seq.*)

## (Alleged by Plaintiff Sager on behalf of the Alabama Subclass)

372.   Ford restates and incorporates by reference all responses as though fully set forth herein.

373.   Paragraph 373 contains a legal conclusion to which no response is required.   To the extent a response is required, Ford denies the allegations in Paragraph 373 that are directed at Ford.

374.   Paragraph 374 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 374, and therefore denies them.

375.   Paragraph 375 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 375, and therefore denies them.

376.   Paragraph 376 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

or information to admit or deny the allegations in Paragraph 376, and therefore denies them.

377. Paragraph 377 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of ALA. CODE §8-19-5 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 377.

378. Ford denies the allegations in Paragraph 378.

379. Ford denies the allegations in Paragraph 379.

380. Ford denies the allegations in Paragraph 380.

381. Ford denies the allegations in Paragraph 381.

382. Ford denies the allegations in Paragraph 382.

383. Ford denies the allegations in Paragraph 383.

384. Ford denies the allegations in Paragraph 384.

385. The allegations in Paragraph 385, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 385. Ford denies all the remaining allegations in Paragraph 385.

386.   The allegations in Paragraph 386 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 386.

387.   Ford denies the allegations in Paragraph 387.

388.   Ford denies the allegations in Paragraph 388.

389.   Ford denies the allegations in Paragraph 389 and denies that Plaintiffs are entitled to any relief in this matter.

390.   Ford denies the allegations in Paragraph 390 and denies that Plaintiffs are entitled to any relief in this matter.

391.   The allegations in Paragraph 391 contain legal conclusions to which no response is required. To the extent a response is required, Ford admits that Plaintiff Steven Beck sent Ford a letter on September 1, 2022, but denies that the letter satisfied the requirements of ALA. CODE § 8-19-10(e).   Ford denies that it has engaged in unlawful conduct and denies all remaining allegations in Paragraph 391.

## 2.   Arizona

## COUNT V

## VIOLATIONS OF THE ARIZONA CONSUMER FRAUD ACT
### (Arizona Rev. Stat. § 44-1521, *et seq.*)

### (Alleged by Plaintiff Ellers on behalf of the Arizona Subclass)

392.   Ford restates and incorporates by reference all responses as though fully set forth herein.

92

393.  Paragraph 393 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 393 that are directed at Ford.

394.  Paragraph 394 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 394, and therefore denies them.

395.  Paragraph 395 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 395, and therefore denies them.

396.  Paragraph 396 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 396, and therefore denies them.

397.  Paragraph 397 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford states that the text of ARIZ REV. STAT. § 44-1522 speaks for itself and denies any allegations that are inconsistent with the text of the statute.  By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 397.

398.    Ford denies the allegations in Paragraph 398.

399.    Ford denies the allegations in Paragraph 399.

400.    Ford denies the allegations in Paragraph 400.

401.    Ford denies the allegations in Paragraph 401.

402.    Ford denies the allegations in Paragraph 402.

403.    Ford denies the allegations in Paragraph 403.

404.    Ford denies the allegations in Paragraph 404.

405.    The allegations in Paragraph 405, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 405.    Ford denies all the remaining allegations in Paragraph 405.

406.    The allegations in Paragraph 406 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 406.

407.    Ford denies the allegations in Paragraph 407.

408.    Ford denies the allegations in Paragraph 408.

409.    Ford denies the allegations in Paragraph 409 and denies that Plaintiffs are entitled to any relief in this matter.

410.    Ford denies the allegations in Paragraph 410 and denies that Plaintiffs are entitled to any relief in this matter.

### 3. Arkansas

## COUNT VI

## VIOLATION OF THE DECEPTIVE TRADE PRACTICE ACT
(Ark. Code Ann. § 4-88-101, *et seq.*)

### (Alleged by Plaintiff Stowers on behalf of the Arkansas Subclass)

411-429.    The Court has dismissed the claims asserted against Ford in Count VI by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 411 through 429.

## COUNT VII

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER ARKANSAS LAW
(Ark. Code Ann. § 4-2-314)

### (Alleged by Plaintiff Stowers on behalf of the Arkansas Subclass)

430-438.    The Court has dismissed the claims asserted against Ford in Count VII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 430 through 438.

### 4. California

## COUNT VIII

## VIOLATION OF THE CALIFORNIA
## CONSUMER LEGAL REMEDIES ACT
### (Cal. Civ. Code § 1750, *et seq.*)

### (Alleged by Plaintiffs Beck, Braden, John Schabinger, Edward Blaine Schabinger, and Tellez on behalf of the California Subclass)

439. Ford restates and incorporates by reference all responses as though fully set forth herein.

440. Paragraph 440 contains a legal conclusion to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 440 that are directed at Ford.

441. Paragraph 441 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 441, and therefore denies them.

442. Paragraph 442 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 442, and therefore denies them.

443. Ford denies the allegations in Paragraph 443.

444. Ford denies the allegations in Paragraph 444.

445. Ford denies the allegations in Paragraph 445.

446. Ford denies the allegations in paragraph 446.

447. Ford denies the allegations in paragraph 447.

448. The allegations in Paragraph 448, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 448. Ford denies all the remaining allegations in Paragraph 448.

449. Ford denies the allegations in Paragraph 449.

450. Ford denies the allegations in paragraph 450.

451. The allegations in Paragraph 451 contain legal conclusions to which no response is required. To the extent a response is required, Ford admits that Plaintiff Steven Beck sent Ford a letter on September 1, 2022, but denies that the letter satisfied the requirements of CAL. CIV. CODE § 1782(a). Ford denies that it has engaged in unlawful conduct and denies all remaining allegations in Paragraph 451.

452. Ford denies the allegations in Paragraph 452.

453. Plaintiff denies the allegations in paragraph 453 and denies that Plaintiffs are entitled to any relief in this matter.

97

## COUNT IX

### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
(Cal. Bus. & Prof. Code § 17200)

### (Alleged by Plaintiffs Beck, Braden, John Schabinger, Edward Blaine Schabinger, and Tellez on behalf of the California Subclass)

454. Ford restates and incorporates by reference all responses as though fully set forth herein.

455. Paragraph 455 contains a legal conclusion to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 455 that are directed at Ford.

456. Paragraph 456 contains legal conclusions to which no response is required. To the extent a response is required, Ford states that the text of Cal. Bus. & Prof. Code § 17200 speaks for itself and denies any allegations that inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 456.

457. Ford denies the allegations in Paragraph 457.

458. Ford denies the allegations in Paragraph 458.

459. Ford denies the allegations in Paragraph 459.

460. Ford denies the allegations in Paragraph 460.

461. Ford denies the allegations in Paragraph 461.

462. Ford denies the allegations in Paragraph 462.

463. Ford denies the allegations in Paragraph 463.

464. Ford denies the allegations in Paragraph 464 and denies that Plaintiffs are entitled to any relief in this matter.

## COUNT X

## VIOLATIONS OF CALIFORNIA FALSE ADVERTISING LAW
(Cal. Bus. & Prof. Code § 17500, et seq.)

**(Alleged by Plaintiffs Beck, Braden, John Schabinger, Edward Blaine Schabinger, and Tellez on behalf of the California Subclass)**

465. Ford restates and incorporates by reference all responses as though fully set forth herein.

466. Paragraph 466 contains a legal conclusion to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 466 that are directed at Ford.

467. Paragraph 467 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of Cal. Bus. & Prof. Code § 17500 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 467.

468. Ford denies the allegations in Paragraph 468.

469. Ford denies the allegations in Paragraph 469.

470. Ford denies the allegations in Paragraph 470.

99

471.   Ford denies the allegations in Paragraph 471.

472.   Ford denies the allegations in Paragraph 472 and denies that Plaintiffs are entitled to any relief in this matter.

## COUNT XI

### VIOLATION OF SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER CALIFORNIA LAW
(Cal. Civ. Code §§ 1791.1 & 1792)

**(Alleged by Plaintiffs Beck, Braden, John Schabinger, Edward Blaine Schabinger, and Tellez on behalf of the California Subclass)**

473-486.   The Court has dismissed the claims against Ford in Count XI by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57).  Accordingly, no response is required to any of the allegations set forth in Paragraph 473 through 486.

**5.   Colorado**

## COUNT XII

### VIOLATION OF THE COLORADO CONSUMER PROTECTION ACT
(Col. Rev. Stat. §§ 6-1-101, *et seq.*)

**(Alleged by Plaintiff Marshall on behalf of the Colorado Subclass)**

487.   Ford restates and incorporates by reference all responses as though fully set forth herein.

488.   Paragraph 488 contains a legal conclusion to which no response is required.   To the extent a response is required, Ford denies the allegations in Paragraph 488 that are directed at Ford.

489.   Paragraph 489 contains a legal conclusion to which no response is required.   To the extent a response is required, Ford denies the allegations in Paragraph 489 that are directed at Ford.

490.   Paragraph 490 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 490, and therefore denies them.

491.   Paragraph 491 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 491, and therefore denies them.

492.   Paragraph 492 contains a legal conclusion to which no response is required.   To the extent a response is required, Ford states that the text of the Colorado CPA speaks for itself and denies any allegations that are inconsistent with the text of the statute.  By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 492.

493.   Ford denies the allegations in Paragraph 493.

494.   Ford denies the allegations in Paragraph 494.

495.   Ford denies the allegations in Paragraph 495.

496.   Ford denies the allegations in Paragraph 496.

497. Ford denies the allegations in Paragraph 497.

498. Ford denies the allegations in Paragraph 498.

499. Ford denies the allegations in Paragraph 499.

500. The allegations in Paragraph 500, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 500. Ford denies all the remaining allegations in Paragraph 500.

501. The allegations in Paragraph 501 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 501.

502. Ford denies the allegations in Paragraph 502.

503. Ford denies the allegations in Paragraph 503.

504. Ford denies the allegations in Paragraph 504 and denies that Plaintiffs are entitled to any relief in this matter.

505. Ford denies the allegations in Paragraph 504 and denies that Plaintiffs are entitled to any relief in this matter.

## COUNT XIII

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER COLORADO LAW
### (Col. Rev. Stat. § 4-2-314)

### (Alleged by Plaintiff Marshall on behalf of the Colorado Subclass)

506-514.    The Court has dismissed the claims asserted against Ford in Count XIII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in paragraph 506 through 514.

**6.    Connecticut**

## COUNT XIV

## VIOLATION OF CONNECTICUT UNLAWFUL TRADE PRACTICES ACT
### (Conn. Gen. Stat. § 42-110a, et seq.)

### (Alleged by Plaintiff Lawless on behalf of the Connecticut Subclass)

515.   Ford restates and incorporates by reference all responses as though fully set forth herein.

516.   Paragraph 516 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 516 that are directed at Ford.

517.   Paragraph 517 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

103

or information to admit or deny the allegations in Paragraph 517, and therefore denies them.

518. Paragraph 518 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 518, and therefore denies them.

519. Paragraph 519 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of CONN. GEN. STAT. § 42-110b(a) speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 519.

520. Ford denies the allegations in Paragraph 520.

521. Ford denies the allegations in Paragraph 521.

522. Ford denies the allegations in Paragraph 522.

523. Ford denies the allegations in Paragraph 523.

524. Ford denies the allegations in Paragraph 524.

525. Ford denies the allegations in Paragraph 525.

526. Ford denies the allegations in Paragraph 526.

527. The allegations in Paragraph 527, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response

104

is required, Ford denies the allegations in Paragraph 527. Ford denies all the remaining allegations in Paragraph 527.

528. The allegations in Paragraph 528 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 528.

529. Ford denies the allegations in Paragraph 529.

530. Ford denies the allegations in Paragraph 530.

531. Ford denies the allegations in Paragraph 531 and denies that Plaintiffs are entitled to any relief in this matter.

532. Ford denies the allegations in Paragraph 532 and denies that Plaintiffs are entitled to any relief in this matter.

**7. Florida**

## COUNT XV

### VIOLATION OF THE FLORIDA DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (Fla. Stat. § 501.201, *et. seq.*)

**(Alleged by Plaintiffs Holicz and Koblasz on behalf of the Florida Subclass)**

533-550. The Court has dismissed the claims asserted against Ford in Count XV by all Plaintiffs and all proposed classes of Plaintiffs. (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 533 through 550.

## COUNT XVI

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER FLORIDA LAW
### (Fla. Stat. § 672.314)

### (Alleged by Plaintiffs Holicz and Koblasz on behalf of the Florida Subclass)

551-561. The Court has dismissed the claims asserted against Ford in Count XVI by all Plaintiffs and all proposed classes of Plaintiffs. (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 551 through 561.

**8. Illinois**

## COUNT XVII

## VIOLATION OF ILLINOIS CONSUMER FRAUD AND
## DECEPTIVE BUSINESS PRACTICES ACT
### (815 ILCS 505/1, *et seq.* and 720 ILCS 295/1a)

### (Alleged by Plaintiffs Brock and Scott on behalf of the Illinois Subclass)

562. Ford restates and incorporates by reference all responses as though fully set forth herein.

563. Paragraph 563 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 563, and therefore denies them.

564. Paragraph 564 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge

or information to admit or deny the allegations in Paragraph 564, and therefore denies them.

565.    Paragraph 565 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 565, and therefore denies them.

566.    Paragraph 566 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 566, and therefore denies them.

567.    Paragraph 567 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford states that the text of 815 ILCS 505/2 speaks for itself and denies any allegations that are inconsistent with the text of the statute.  By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 567.

568.    Ford denies the allegations in Paragraph 568.

569.    Ford denies the allegations in Paragraph 569.

570.    Ford denies the allegations in Paragraph 570.

571.    Ford denies the allegations in Paragraph 571.

572.    Ford denies the allegations in Paragraph 572.

573. Ford denies the allegations in Paragraph 573.

574. Ford denies the allegations in Paragraph 574.

575. The allegations in Paragraph 575, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 575. Ford denies all the remaining allegations in Paragraph 575.

576. The allegations in Paragraph 576 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 576.

577. Ford denies the allegations in Paragraph 577.

578. Ford denies the allegations in Paragraph 578.

579. Ford denies the allegations in Paragraph 579 and denies that Plaintiffs are entitled to any relief in this matter.

580. Ford denies the allegations in Paragraph 580 and denies that Plaintiffs are entitled to any relief in this matter.

## COUNT XVIII

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER ILLINOIS LAW
### (810 Ill. Comp. Stat. §§ 5/2-314 and 5/2A-212)

### (Alleged by Plaintiffs Brock and Scott on behalf of the Illinois Subclass)

581-590.   The Court has dismissed the claims asserted against Ford in Count XVIII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 581 through 590.

**9.    Indiana**

## COUNT XIX

## VIOLATION OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### (Ind. Code § 24-5-0.5-3)

### (Alleged by Plaintiff Powell on behalf of the Indiana Subclass)

591.   Ford restates and incorporates by reference all responses as though fully set forth herein.

592.   Paragraph 592 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 592 that are directed at Ford.

593.   Paragraph 593 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

109

or information to admit or deny the allegations in Paragraph 593, and therefore denies them.

594. Paragraph 594 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 594, and therefore denies them.

595. Paragraph 595 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 595, and therefore denies them.

596. Paragraph 596 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of Indiana DCSA speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 596.

597. Ford denies the allegations in Paragraph 597.

598. Ford denies the allegations in Paragraph 598.

599. Ford denies the allegations in Paragraph 599.

600. Ford denies the allegations in Paragraph 600.

601. Ford denies the allegations in Paragraph 601.

602. Ford denies the allegations in Paragraph 602.

603. Ford denies the allegations in Paragraph 603.

604. The allegations in Paragraph 604, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 604. Ford denies all the remaining allegations in Paragraph 604.

605. The allegations in Paragraph 605 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 605.

606. Ford denies the allegations in Paragraph 606.

607. Ford denies the allegations in Paragraph 607.

608. Ford denies the allegations in Paragraph 608 and denies that Plaintiffs are entitled to any relief in this matter.

609. The allegations in Paragraph 609 contain legal conclusions to which no response is required. To the extent a response is required, Ford admits that Plaintiff Steven Beck sent Ford a letter on September 1, 2022, but denies that the letter satisfied the requirements of IND. CODE § 24-5-0.05-5(a). Ford denies that it has engaged in unlawful conduct and denies all remaining allegations in Paragraph 609.

111

## COUNT XX

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER INDIANA LAW
### (Ind. Code § 26-1-2-314)

### (Alleged by Plaintiff Powell on behalf of the Indiana Subclass)

610-618.    The Court has dismissed the claims asserted against Ford in Count XX by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 610 through 618.

**10.    Iowa**

## COUNT XXI

## CONSUMER FRAUDS ACTS IN VIOLATION OF IOWA LAW
### (IOWA CODE § 714H.1 ET SEQ.)

### (Alleged by Plaintiffs Katch and Stutler Jr. on behalf of the Iowa Subclass)

619.   Ford restates and incorporates by reference all responses as though fully set forth herein.

620.   Paragraph 620 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 620 that are directed at Ford.

621.   Paragraph 621 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

112

or information to admit or deny the allegations in Paragraph 621, and therefore denies them.

622. Paragraph 622 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 622, and therefore denies them.

623. Paragraph 623 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 623, and therefore denies them.

624. Paragraph 624 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of Iowa Code § 714H.3 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 624.

625. Ford denies the allegations in Paragraph 625.

626. Ford denies the allegations in Paragraph 626.

627. Ford denies the allegations in Paragraph 627.

628. Ford denies the allegations in Paragraph 628.

629. Ford denies the allegations in Paragraph 629.

630. Ford denies the allegations in Paragraph 630.

631. Ford denies the allegations in Paragraph 631.

632. The allegations in Paragraph 632, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 632. Ford denies all the remaining allegations in Paragraph 632.

633. The allegations in Paragraph 633 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 633.

634. Ford denies the allegations in Paragraph 634.

635. Ford denies the allegations in Paragraph 635.

636. Ford denies the allegations in Paragraph 636 and denies that Plaintiffs are entitled to any relief in this matter.

637. Ford denies the allegations in Paragraph 637 and denies that Plaintiffs are entitled to any relief in this matter.

### 11.   Montana

## COUNT XXII

## VIOLATION OF MONTANA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION ACT OF 1973
## (Mont. Code Ann. § 30-14-101, *et seq.*)

### (Alleged by Plaintiff Porter on behalf of the Montana Subclass)

638.   Ford restates and incorporates by reference all responses as though fully set forth herein.

639.   Paragraph 639 contains a legal conclusion to which no response is required.   To the extent a response is required, Ford denies the allegations in Paragraph 639 that are directed at Ford.

640.   Paragraph 640 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 640, and therefore denies them.

641.   Paragraph 641 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 641, and therefore denies them.

642.   Paragraph 642 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

or information to admit or deny the allegations in Paragraph 642, and therefore denies them. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 642.

643. Paragraph 643 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of the Montana CPA speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 643.

644. Ford denies the allegations in Paragraph 644.

645. Ford denies the allegations in Paragraph 645.

646. Ford denies the allegations in Paragraph 646.

647. Ford denies the allegations in Paragraph 647.

648. Ford denies the allegations in Paragraph 648.

649. Ford denies the allegations in Paragraph 649.

650. Ford denies the allegations in Paragraph 650.

651. The allegations in Paragraph 651, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 651. Ford denies all the remaining allegations in Paragraph 651.

652.    The allegations in Paragraph 652 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 652.

653.    Ford denies the allegations in Paragraph 653.

654.    Ford denies the allegations in Paragraph 654.

655.    Ford denies the allegations in Paragraph 655 and denies that Plaintiffs are entitled to any relief in this matter.

**COUNT XXIII**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER MONTANA LAW
(Mont. Code § 30-2-314)**

**(Alleged by Plaintiff Porter on behalf of the Montana Subclass)**

656-664.    The Court has dismissed the claims asserted against Ford in Count XXIII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 656 through 664.

**12.     New Jersey**

## COUNT XXIV

## VIOLATION OF THE NEW JERSEY CONSUMER FRAUD ACT
### (N.J.S.A. § 56:8-1, *et seq.*)

### (Alleged by Plaintiff Willard on behalf of the New Jersey Subclass)

665.   Ford restates and incorporates by reference all responses as though fully set forth herein.

666.   Paragraph 666 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 666 that are directed at Ford.

667.   Paragraph 667 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 667, and therefore denies them.

668.   Paragraph 668 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 668, and therefore denies them.

669.   Paragraph 669 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford states that the text of N.J. Stat. Ann. § 56:8-2 speaks for itself and denies any allegations that are inconsistent with

the text of the statute.  By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 669.

670.   Ford denies the allegations in Paragraph 670.

671.   Ford denies the allegations in Paragraph 671.

672.   Ford denies the allegations in Paragraph 672.

673.   Ford denies the allegations in Paragraph 673.

674.   Ford denies the allegations in Paragraph 674.

675.   Ford denies the allegations in Paragraph 675.

676.   Ford denies the allegations in Paragraph 676.

677.   The allegations in Paragraph 677, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 677.  Ford denies all the remaining allegations in Paragraph 677.

678.   For The allegations in Paragraph 678 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 678.

679.   Ford denies the allegations in Paragraph 679.

680.   Ford denies the allegations in Paragraph 680.

681.   Ford denies the allegations in Paragraph 681 and denies that Plaintiffs are entitled to any relief in this matter.

119

## COUNT XXV

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER NEW JERSEY LAW

### (Alleged by Plaintiff Willard on behalf of the New Jersey Subclass)

682-690.   The Court has dismissed the claims asserted against Ford in Count XXV by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 682 through 690.

**13.    New Mexico**

## COUNT XXVI

## VIOLATION OF THE NEW MEXICO UNFAIR TRADE PRACTICES ACT
### (N.M. Stat. Ann. §§ 57-12-1, et seq.)

### (Alleged by Plaintiffs Michael and Gail Gneckow on behalf of the New Mexico Subclass)

691.   Ford restates and incorporates by reference all responses as though fully set forth herein.

692.   Paragraph 692 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 692 that are directed at Ford.

693.   Paragraph 693 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

or information to admit or deny the allegations in Paragraph 693, and therefore denies them.

694. Paragraph 694 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 694, and therefore denies them.

695. Paragraph 695 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of N.M. Stat. Ann. § 57-12-2 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 695.

696. Ford denies the allegations in Paragraph 696.

697. Ford denies the allegations in Paragraph 697.

698. Ford denies the allegations in Paragraph 698.

699. Ford denies the allegations in Paragraph 699.

700. Ford denies the allegations in Paragraph 700.

701. Ford denies the allegations in Paragraph 701.

702. Ford denies the allegations in Paragraph 702.

703. The allegations in Paragraph 703, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response

is required, Ford denies the allegations in Paragraph 703. Ford denies all the remaining allegations in Paragraph 703.

704. The allegations in Paragraph 704 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 704.

705. Ford denies the allegations in Paragraph 705.

706. Ford denies the allegations in Paragraph 706.

707. Ford denies the allegations in Paragraph 707 and denies that Plaintiffs are entitled to any relief in this matter.

**14.    North Carolina**

**COUNT XXVII**

**VIOLATION OF THE NORTH CAROLINA UNFAIR AND
DECEPTIVE TRADE PRACTICES ACT
(N.C. GEN. STAT. § 75-1.1, et seq.)**

**(Alleged by Plaintiffs Anderson, Taylor, and Thomas on behalf of the North
Carolina Subclass)**

708. Ford restates and incorporates by reference all responses as though fully set forth herein.

709. Paragraph 709 contains a legal conclusion to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 709 that are directed at Ford.

710. Paragraph 710 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 710, and therefore denies them.

711. Paragraph 711 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of N.C.G.S. § 75-1.1 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 711.

712. Ford denies the allegations in Paragraph 712.

713. Ford denies the allegations in Paragraph 713.

714. Ford denies the allegations in Paragraph 714.

715. Ford denies the allegations in Paragraph 715.

716. Ford denies the allegations in Paragraph 716.

717. Ford denies the allegations in Paragraph 717.

718. Ford denies the allegations in Paragraph 718.

719. Ford denies the allegations in Paragraph 719.

720. The allegations in Paragraph 720 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations

in Paragraph 720.  Ford denies all other allegations in Paragraph 720 and specifically

denies any allegation of wrongdoing in Paragraph 720.

721.    Ford denies the allegations in Paragraph 721.

722.    Ford denies the allegations in Paragraph 722.

723.    Ford denies the allegations in Paragraph 723.

724.    Ford denies the allegations in Paragraph 724.

725.    Ford denies the allegations in Paragraph 725 and denies that Plaintiffs

are entitled to any relief in this matter.

**COUNT XXVIII**

**BREACH OF IMPLIED WARRANTY OF
MERCHANTABILITY UNDER NORTH CAROLINA LAW**

**(Alleged by Plaintiffs Anderson, Taylor, and Thomas on behalf of the North
Carolina Subclass)**

726-734.    The Court has dismissed the claims asserted against Ford in

Count XXVIII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57).

Accordingly, no response is required to any of the allegations set forth in Paragraph

726 through 734.

124

**15.** **Oklahoma**

## COUNT XXIX

## VIOLATION OF OKLAHOMA CONSUMER PROTECTION ACT
### (OKLA. STAT. TIT. 15, § 751, et seq.)

### (Alleged by Plaintiff Griffit on behalf of the Oklahoma Subclass)

735. Ford restates and incorporates by reference all responses as though fully set forth herein.

736. Paragraph 736 contains a legal conclusion to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 736 that are directed at Ford.

737. Paragraph 737 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 737, and therefore denies them.

738. Paragraph 738 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 738, and therefore denies them.

739. Paragraph 739 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge

125

or information to admit or deny the allegations in Paragraph 739, and therefore denies them.

740. Paragraph 740 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 740, and therefore denies them.

741. Paragraph 741 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of Okla. Stat. tit. 15, § 753 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 741.

742. Ford denies the allegations in Paragraph 742.

743. Ford denies the allegations in Paragraph 743.

744. Ford denies the allegations in Paragraph 744.

745. Ford denies the allegations in Paragraph 745.

746. Ford denies the allegations in Paragraph 746.

747. Ford denies the allegations in Paragraph 747.

748. Ford denies the allegations in Paragraph 748.

749. The allegations in Paragraph 749, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response

is required, Ford denies the allegations in Paragraph 749. Ford denies all the remaining allegations in Paragraph 749.

750. The allegations in Paragraph 750 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 750.

751. Ford denies the allegations in Paragraph 751.

752. Ford denies the allegations in Paragraph 752.

753. Ford denies the allegations in Paragraph 753 and denies that Plaintiffs are entitled to any relief in this matter.

754. Ford denies the allegations in Paragraph 754 and denies that Plaintiffs are entitled to any relief in this matter.

## COUNT XXX

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (OKLA. STAT. ANN. § 12A-2-314)

### (Alleged by Plaintiff Griffit and the Oklahoma Subclass)

755-763. The Court has dismissed the claims asserted against Ford in Count XXX by all Plaintiffs and all proposed classes of Plaintiffs. (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 755 through 763.

127

### 16. Oregon

## COUNT XXXI

## VIOLATION OF THE OREGON UNLAWFUL TRADE PRACTICES ACT
### (Or. Rev. Stat. §§ 646.605, et seq.)

### (Alleged by Plaintiffs Rains and Robbins on behalf of the Oregon Subclass)

764. Ford restates and incorporates by reference all responses as though fully set forth herein.

765. Paragraph 765 contains a legal conclusion to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 765 that are directed at Ford.

766. Paragraph 766 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 766, and therefore denies them.

767. Paragraph 767 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 767, and therefore denies them.

768. Paragraph 768 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge

128

or information to admit or deny the allegations in Paragraph 768, and therefore denies them.

769. Paragraph 769 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of Or. Rev. Stat. § 646.608 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 769.

770. Ford denies the allegations in Paragraph 770.

771. Ford denies the allegations in Paragraph 771.

772. Ford denies the allegations in Paragraph 772.

773. Ford denies the allegations in Paragraph 773.

774. Ford denies the allegations in Paragraph 774.

775. Ford denies the allegations in Paragraph 775.

776. Ford denies the allegations in Paragraph 776.

777. The allegations in Paragraph 777, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 777. Ford denies all the remaining allegations in Paragraph 777.

778.   The allegations in Paragraph 778 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 778.

779.   Ford denies the allegations in Paragraph 779.

780.   Ford denies the allegations in Paragraph 780.

781.   Ford denies the allegations in Paragraph 781 and denies that Plaintiffs are entitled to any relief in this matter.

## COUNT XXXII

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER OREGON LAW (Or. Rev. Stat. § 72.3140)

**(Alleged by Plaintiffs Rains and Robbins on behalf of the Oregon Subclass)**

782-790.   The Court has dismissed the claims asserted against Ford in Count XXXII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 782 through 790.

## 17. South Carolina

### COUNT XXXIII

### VIOLATION OF THE SOUTH CAROLINA UNFAIR TRADE PRACTICES ACT
### (S.C. Code Ann. § 39-5-10, et seq.)

### (Alleged by Plaintiff Everett Sylvester Wilson III on behalf of the South Carolina Subclass)

791-809.    The Court has dismissed the claims asserted against Ford in Count XXXIII by all Plaintiffs and all proposed classes of Plaintiffs. (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 791 through 809.

### COUNT XXXIV

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY UNDER SOUTH CAROLINA LAW
### (S.C. Code Ann. §§ 36-2-314 and 36-2A-212, *et seq.*)

### (Alleged by Plaintiff Everett Sylvester Wilson III on behalf of the South Carolina Subclass)

810-818.    The Court has dismissed the claims asserted against Ford in Count XXXIV by all Plaintiffs and all proposed classes of Plaintiffs. (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 810 through 818.

**18.    Texas**

## COUNT XXXV

### VIOLATION OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
(Tex. Bus. & Com. Code Ann. § 17.41, *et seq.*)

### (Alleged by Plaintiffs Brenda L. Rhodes and Stephen T. Rhodes
on behalf of the Texas Subclass)

819.    Ford restates and incorporates by reference all responses as though fully set forth herein.

820.    Paragraph 820 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 820 that are directed at Ford.

821.    Paragraph 821 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 821, and therefore denies them.

822.    Paragraph 822 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford states that the text of the Texas Deceptive Trade Practices-Consumer Protection Act speaks for itself and denies any allegations that are inconsistent with the text of the statute.  By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 822.

823.    Ford denies the allegations in Paragraph 823.

132

824. Ford denies the allegations in Paragraph 824.

825. Ford denies the allegations in Paragraph 825.

826. Ford denies the allegations in Paragraph 826.

827. Ford denies the allegations in Paragraph 827.

828. Ford denies the allegations in Paragraph 828.

829. Ford denies the allegations in Paragraph 829.

830. Ford denies the allegations in Paragraph 830.

831. Ford denies the allegations in Paragraph 831.

832. Ford denies the allegations in Paragraph 832.

833. Ford denies the allegations in Paragraph 833.

834. Ford denies the allegations in Paragraph 834.

835. Ford denies the allegations in Paragraph 835.

836. Ford denies the allegations in Paragraph 836.

837. The allegations in Paragraph 837, including subparagraphs (a) – (c) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 837.  Ford denies all the remaining allegations in Paragraph 837.

838. Ford denies the allegations in Paragraph 838.

839. Ford denies the allegations in Paragraph 839.

840. Ford denies the allegations in Paragraph 840.

841.    Ford denies the allegations in Paragraph 841.

842.    Ford denies the allegations in Paragraph 842.

843.    Ford denies the allegations in Paragraph 843 and denies that Plaintiffs are entitled to any relief in this matter.

844.    Ford denies the allegations in Paragraph 844 and denies that Plaintiffs are entitled to any relief in this matter.

845.    Ford denies the allegations in Paragraph 845 and denies that Plaintiffs are entitled to any relief in this matter.

846.    The allegations in Paragraph 846 contain legal conclusions to which no response is required.  To the extent a response is required, Ford admits that it received a letter alleging violations of the Texas DTPA regarding the vehicles subject to this action but denies that the letter satisfied the requirements of Tex. Bus. & Com. Code Ann. § 17.505(a).  Ford denies that it has engaged in unlawful conduct and denies all remaining allegations in Paragraph 846.

847.    Ford denies the allegations in Paragraph 847 and denies that Plaintiffs are entitled to any relief in this matter.

134

## COUNT XXXVI

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER TEXAS LAW

## (Alleged by Plaintiffs Brenda L. Rhodes and Stephen T. Rhodes
## on behalf of the Texas Subclass)

848-856.   The Court has dismissed the claims asserted against Ford in Count XXXVI by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57). Accordingly, no response is required to any of the allegations set forth in Paragraph 848 through 856.

**19.   Utah**

## COUNT XXXVII

## VIOLATION OF THE UTAH CONSUMER SALES PRACTICES ACT
## (Utah Code Ann. § 13-11-1, *et seq.*)

## (Alleged by Plaintiff Duenes on behalf of the Utah Subclass)

857.   Ford restates and incorporates by reference all responses as though fully set forth herein.

858.   Paragraph 858 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 858 that are directed at Ford.

859.   Paragraph 859 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

135

or information to admit or deny the allegations in Paragraph 859, and therefore denies them.

860. Paragraph 860 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 860, and therefore denies them.

861. Paragraph 861 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 861, and therefore denies them.

862. Paragraph 862 contains a legal conclusion to which no response is required. To the extent a response is required, Ford is without sufficient knowledge or information to admit or deny the allegations in Paragraph 862, and therefore denies them.

863. Paragraph 863 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of the Utah CSPA speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 863.

864. Ford denies the allegations in Paragraph 864.

136

865. Ford denies the allegations in Paragraph 865.

866. Ford denies the allegations in Paragraph 866.

867. Ford denies the allegations in Paragraph 867.

868. Ford denies the allegations in Paragraph 868.

869. Ford denies the allegations in Paragraph 869.

870. Ford denies the allegations in Paragraph 870.

871. The allegations in Paragraph 871, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 871. Ford denies all the remaining allegations in Paragraph 871.

872. The allegations in Paragraph 872 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 872.

873. Ford denies the allegations in Paragraph 873.

874. Ford denies the allegations in Paragraph 874.

875. Ford denies the allegations in Paragraph 875 and denies that Plaintiffs are entitled to any relief in this matter.

137

## COUNT XXXVIII

## BREACH OF IMPLIED WARRANTY OF
## MERCHANTABILITY UNDER UTAH LAW
### (Utah Code Ann. § 70A-2-314)

### (Alleged by Plaintiff Duenes and the Utah Subclass)

876-884.    The Court has dismissed the claims asserted against Ford in Count XXXVIII by all Plaintiffs and all proposed classes of Plaintiffs.  (ECF No. 57).  Accordingly, no response is required to any of the allegations set forth in Paragraph 876 through 884.

**20.    Washington**

## COUNT XXXIX

## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### (Wash. Rev. Code Ann. §§ 19.86.010, et seq.)

### (Alleged by Plaintiffs Bright and Gosser on behalf of the Washington Subclass)

885.   Ford restates and incorporates by reference all responses as though fully set forth herein.

886.   Paragraph 886 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford denies the allegations in Paragraph 886 that are directed at Ford.

887.   Paragraph 887 contains a legal conclusion to which no response is required.  To the extent a response is required, Ford is without sufficient knowledge

138

or information to admit or deny the allegations in Paragraph 887, and therefore denies them.

888. Paragraph 888 contains a legal conclusion to which no response is required. To the extent a response is required, Ford states that the text of Wash. Code § 19.96.010 speaks for itself and denies any allegations that are inconsistent with the text of the statute. By way of further response, Ford denies any allegation of wrongdoing set forth in Paragraph 888.

889. Ford denies the allegations in Paragraph 889.

890. Ford denies the allegations in Paragraph 890.

891. Ford denies the allegations in Paragraph 891.

892. Ford denies the allegations in Paragraph 892.

893. Ford denies the allegations in Paragraph 893.

894. Ford denies the allegations in Paragraph 894.

895. Ford denies the allegations in Paragraph 895.

896. The allegations in Paragraph 896, including subparagraphs (a) – (d) contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 896. Ford denies all the remaining allegations in Paragraph 896.

897. The allegations in Paragraph 897 contain legal conclusions to which no response is required. To the extent a response is required, Ford denies the allegations in Paragraph 897.

898. Ford denies the allegations in paragraph 898.

899. Ford denies the allegations in paragraph 899.

900. Ford denies the allegations in paragraph 900 and denies that Plaintiffs are entitled to any relief in this matter.

## REQUEST FOR RELIEF

Ford denies that Plaintiffs are entitled to the relief they seek in the Request for Relief. To the extent a further response is required, Ford denies any remaining allegations that pertain to Ford.

## AFFIRMATIVE DEFENSES

Ford asserts the following defenses without assuming the burden of proof where such burden is otherwise on Plaintiffs as a matter of applicable substantive or procedural law.

## FIRST DEFENSE

The claims of certain Plaintiffs and members of the putative classes are barred, in whole or in part, because they lack standing to bring their claims.

140

## SECOND DEFENSE

The allegations in the Complaint fail to state a claim upon which relief may be granted.

## THIRD DEFENSE

Plaintiffs are not entitled to pursue this action as a class action under Federal Rule of Civil Procedure 23, and Plaintiffs' claims or the claims of some or all putative class members may be barred, in whole or in part, because the applicable statutes prohibit class actions.

## FOURTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, because Ford owed no legal duty to Plaintiffs as alleged in the Complaint.

## FIFTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, because of the lack of privity with Ford.

## SIXTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, by the applicable statutes of limitations or statutes of repose.

## SEVENTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, by the economic loss doctrine.

## EIGHTH DEFENSE

The claims of Plaintiffs and putative class members are barred because the alleged defect in the subject vehicles never manifested itself.

## NINTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, because Plaintiffs have not suffered legally cognizable damages.

## TENTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, because Plaintiffs did not rely on any representation or omission by Ford.

## ELEVENTH DEFENSE

To the extent that Ford made any representation that was untrue, which is expressly denied, the claims of Plaintiffs and putative class members are barred, in whole or in part, because Ford lacked knowledge, intent, or willfulness.

## TWELFTH DEFENSE

To the extent that Ford made any representation that was untrue, which is expressly denied, the claims of Plaintiffs and putative class members are barred, in whole or in part, because such representation was not material.

## THIRTEENTH DEFENSE

The claims of certain Plaintiffs and putative class members are barred, in whole or in part, because they did not timely provide pre-suit notice.

142

## FOURTEENTH DEFENSE

The claims of certain Plaintiffs and putative class members are barred, in whole or in part, by virtue of the existence of an express limited warranty with respect to the subject vehicle.

## FIFTEENTH DEFENSE

The claims of certain Plaintiffs and putative class members are barred, in whole or in part, because there is no liability for incidental or consequential damages under the applicable law and by the terms of the limited warranty for the subject vehicles.

## SIXTEENTH DEFENSE

The claims of certain Plaintiffs and putative class members are barred, in whole or in part, due to the expiration of an express limited warranty with respect to the subject vehicle.

## SEVENTEENTH DEFENSE

The claims of certain Plaintiffs and putative class members are barred, in whole or in part, because the limited warranties for the subject vehicles limit their remedies to repair, replacement, or adjustment only.

## EIGHTEENTH DEFENSE

Plaintiffs' and putative class members' alleged damages, if any, were caused or contributed to by the negligence or fault or other persons, firms, corporations, or

143

entities over whom Ford has and had no control or right of control and for whom it is not responsible.

### NINETEENTH DEFENSE

Plaintiffs' and putative class members' recovery should be reduced to the extent they have failed to mitigate their damages, if any.

### TWENTIETH DEFENSE

The Complaint fails to state a claim for punitive damages.

### TWENTY-FIRST DEFENSE

Plaintiffs' and putative class members' claims for punitive damages are barred because Ford did not engage in any conduct that would support an award of punitive damages.

### TWENTY-SECOND DEFENSE

Plaintiffs' and putative class members' claims for punitive damages would violate Ford's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution and similar provisions of applicable state constitutions, statutes, and case law.

### TWENTY-THIRD DEFENSE

To the extent that Plaintiffs or putative class members receive or have received compensation for all or part of their injuries and damages alleged in the Complaint,

144

the amount of any damages that may be recovered against Ford must be diminished as required by law.

## TWENTY-FOURTH DEFENSE

Ford is entitled to a set-off for all settlements and compensation that Plaintiffs or putative class members have received, or may receive, in connection with their claims.

## TWENTY-FIFTH DEFENSE

The vehicles in question were manufactured in a reasonably safe manner in full compliance with all applicable laws, statutes, and regulations and, therefore, Plaintiffs and putative class members are barred from recovery.

## TWENTY-SIXTH DEFENSE

The vehicles in questions conformed to the existing state of the art and industry standard at the time they were designed and manufactured.

## TWENTY-SEVENTH DEFENSE

The vehicles in question were fit for their intended purposes.

## TWENTY-EIGHTH DEFENSE

The claims of certain Plaintiffs and putative class members may be barred, in whole or in part, because the defect alleged is the result of a modification to the vehicle, abuse or neglect of the vehicle, failure to properly maintain the vehicle,

145

and/or foreign objects and/or damage due to an accident that occurred after the vehicle was purchased.

## TWENTY-NINTH DEFENSE

The claims of certain Plaintiffs and putative class members may be barred, in whole or in part, because the subject vehicles were used in a manner other than intended.

## THIRTIETH DEFENSE

The claims of certain Plaintiffs may be barred, in whole or in part, by the doctrines of waiver, estoppel, accord and satisfaction, or res judicata.

## THIRTY-FIRST DEFENSE

Plaintiffs' claims for equitable relief are barred, in whole or in part, by the existence of an adequate remedy at law.

## THIRTY-SECOND DEFENSE

Any damages that Plaintiffs might have sustained were unforeseeable.

## THIRTY-THIRD DEFENSE

No act, omission, or conduct of Ford bore a causal relationship to any injury or damages allegedly suffered by Plaintiffs.

## THIRTY-FOURTH DEFENSE

No act, omission, or conduct of Ford was the proximate cause of any alleged injury or damages allegedly suffered by Plaintiffs.

146

## THIRTY-FIFTH DEFENSE

The claims of Plaintiffs and putative class members may be subject to binding arbitration or similar contractual provisions that preclude them from asserting certain claims as a class representative, a member of a class of claimants, or in any other representative capacity. After conducting a reasonable pre-discovery investigation, Ford has been unable to determine whether the claims of any or all of the named Plaintiffs are subject to arbitration. Ford reserves the right to move to compel any and all claims to arbitration once it determines that any such claim is subject to arbitration.

## THIRTY-SIXTH DEFENSE

The claims of Plaintiffs and putative class members are barred, in whole or in part, to the extent any claim is predicated on an alleged duty to recall, which either does not exist under applicable State law or is preempted by Federal law or within the primary jurisdiction of the NHTSA.

## THIRTY-SEVENTH DEFENSE

The claims of Plaintiffs and putative class members may be barred because the vehicle owners failed to comply with contractual preconditions to obtaining relief, the owners breached first, or the owners otherwise repudiated the terms of their contract.

147

## THIRTY-EIGHTH DEFENSE

Certain claims of Plaintiffs and putative class members may be barred, in whole or in part, because they conferred no benefit on Ford.

## THIRTY-NINTH DEFENSE

Plaintiffs' and putative class members' damages, if any, are speculative and unascertainable.

## FORTIETH DEFENSE

The claims of Plaintiffs and putative class members are barred for failure to join indispensable parties.

## FORTY-FIRST DEFENSE

The claims of Plaintiffs and putative class members are barred to the extent they are not the real parties in interest.

## FORTY-SECOND DEFENSE

The claims of Plaintiffs and putative class members fail to the extent they are within the primary jurisdiction of the National Highway Traffic Safety Administration.

## FORTY-THIRD DEFENSE

The claims of Plaintiffs and putative class members are barred to the extent they are preempted by Federal law.

148

## FORTY-FOURTH DEFENSE

The claims of Plaintiffs and putative class members are barred to the extent they spoliated or failed to preserve evidence, including without limitation their vehicles and any allegedly defective components.

## FORTY-FIFTH DEFENSE

Ford reserves the right to amend or supplement additional defenses based on information learned during the course of this litigation.

WHEREFORE, Ford prays as follows:

1.      Plaintiffs take nothing by the Consolidated Class Action Complaint;

2.      For judgment in favor of Ford;

3.      For an award of costs incurred by Ford in this action; and

4.      For any other relief this Court deems proper.

## JURY DEMAND

Ford demands a trial by jury on all issues so triable.

Dated:  October 14, 2024                          Respectfully submitted,

                                                  By: */s/Derek J. Linkous*
Perry W. Miles, IV                                Stephanie A. Douglas (P70272)
Brian D. Schmalzbach                              Derek J. Linkous (P82268)
MCGUIREWOODS LLP                                  BUSH SYFERTH PLLC
800 East Canal Street                             100 W. Big Beaver Rd., Suite 400
Richmond, VA 23219                                Troy, MI 48084
(804) 775-1000                                    (248) 822-7800
pmiles@mcguirewoods.com                           douglas@bsplaw.com
bschmalzbach@mcguirewoods.com                     linkous@bsplaw.com

*Attorneys for Defendant Ford Motor Company*

149